[S. F. No. 8829. In Bank.—June 10, 1920.]

SOUTH SAN FRANCISCO PACKING AND PROVISION COMPANY (a Corporation), Plaintiff, v. J. JACOBSEN et al., Defendants; D. A. TAYLOR et al., Defendants and Appellants; WESTERN MEAT COMPANY (a Corporation), Defendant and Respondent.

[1] Sale—Passing of Title at Delivery.—Whether or not title to personal property passes through a sale thereof at the time of its delivery depends upon the intention of the parties as shown by all the facts and circumstances of the case.

[2] Id.—Payment upon Delivery by Check—Dishonor—Passing of Title — Rights of Seller.—Where personal property is sold to be paid for upon delivery by check, the sale is to be treated as one for cash, and if the check is dishonored, the title to the property, as between the parties to the sale, remains in the seller, who may retake the property, or if the property has been resold, claim the proceeds in the hands of the second purchasr as against an attaching creditor of the original buyer.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco. Geo. A. Sturtevant, Judge. Reversed.

The facts are stated in the opinion of the court.

tum Suden & tum Suden for Defendants and Appellants.

Sullivan, Sullivan & Theo. J. Roche for Defendant and Respondent.

The following opinion was prepared by Mr. Justice Kerrigan of the district court of appeal of the first appellate district while acting as justice *pro tempore* in this court in place of Mr. Justice Melvin. It is adopted as the opinion of this court.

THE COURT.—This is an appeal from a judgment in favor of the defendant, Western Meat Company, and

---

1. When title passes to buyer, note, 138 Am. St. Rep. 903.

Effect of premature delivery to pass title to purchaser, note, 31 L. R. A. (N. S.) 942.

against the defendants, Taylor & Rosecrans, in an action in interpleader.

Briefly, the facts of the case are these: Taylor & Rosecrans, at the time the transaction here involved took place, were copartners engaged in the livestock business in the state of Idaho, as also was the defendant Jacobsen, their respective places of business, however, not being in the same locality. Shortly before the tenth day of June, 1915, Jacobsen, by telephone, purchased from Taylor & Rosecrans three carloads of hogs at an agreed price, the hogs to be delivered at a certain place in Idaho, where Jacobsen or his agent was to receive them and make payment therefor by check. Accordingly the hogs were delivered and a check for $3,490.98 was given in payment by Jacobsen's agent, the delivery of the check taking place at midnight on said June 10th. Before noon of the following day it was deposited for collection with the firm's bank at Burley, Idaho. It reached the bank in Idaho Falls on which it was drawn three days later, i. e., Monday, June 14th, when payment was refused for lack of funds. As is apparent, Saturday afternoon and Sunday falling within these three days, the actual business time comprehended within said period of three days was but a day and a half. There being no evidence in the record to the contrary, we will presume that the check was presented for payment in the ordinary course of business. On the tenth day of June, when the check was delivered, Jacobsen's bank balance was $1,733.37; on the next day, June 11th, Friday, said balance was increased to about five thousand dollars; on Saturday, June 12th, it had been reduced to about four thousand dollars, and on Monday, when the check was presented for payment, said balance was $1,341.57. Jacobsen had no arrangement with the bank for credit or overdraft.

Shortly after the purchase of the hogs by Jacobsen he disappeared. Commencing with June 14th many checks drawn by him were, when presented at the bank, dishonored. In the meantime, Jacobsen had shipped the hogs to the plaintiff, which in turn disposed of them in San Francisco, and the fund involved in this litigation is part of the sum realized by the plaintiff from their sale. While there is some dispute on the subject, nevertheless it fairly appears from the record not only that defendants Taylor

& Rosecrans, upon learning of the dishonor of the check, demanded the fund from the plaintiff under a claim of ownership, but also that the respondent, Western Meat Company, a creditor of Jacobsen, at about the same time commenced an action against him and levied an attachment on this fund. The plaintiff, being thus confronted with two conflicting claims, commenced this action in interpleader against the partnership, Jacobsen and the Western Meat Company. Jacobsen defaulted, and judgment went for the Western Meat Company as against Taylor & Rosecrans, who have appealed.

The appellants contend that Jacobsen, having obtained delivery of the hogs by means of a worthless check, was guilty of fraud, and that therefore the sale was void, both as to Jacobsen and his attaching creditor. It is true, as contended by the appellants, that the issuance by Jacobsen of this check, payment of which was refused for lack of funds, coupled with his unexplained disappearance, is some evidence of fraud. It appears, however, that after the issuance of the check, and before its presentation for payment three business days later, Jacobsen, on two of those days, had more than sufficient money on deposit to meet the check. This circumstance, with the presumption of innocence and fair dealing, furnish some foundation for the finding of the trial court against fraud; so that in view of what may thus be regarded as a conflict of evidence we are not at liberty to disturb this finding.

There are several technical points made by the appellants in support of their appeal, but as we have concluded that the judgment must be reversed upon the main ground urged it will be unnecessary to discuss these. We are thus brought to the consideration of the principal question involved, viz., whether or not title to the hogs passed at the time of the delivery by Jacobsen's agent of the check.

We are of the opinion that this question must be answered in the negative, and, consequently, that the appellants are entitled to the fund as against Jacobsen's attaching creditor, the Western Meat Company.

[1] Whether or not title to personal property passes through a sale thereof at the time of its delivery depends upon the intention of the parties as shown by all the facts and circumstances of the case, so that the question is ordi-

narily one of fact for the jury, or for the court when sitting without a jury. Where, however, the facts bearing upon the question of intent are undisputed only a question of law is presented. Here the evidence shows without conflict that Jacobsen was to pay for the hogs upon delivery by check; and it is argued by the respondent that accordingly, a check having been given and received in payment for the hogs, title to the animals passed to the buyer notwithstanding that upon due presentation the check was dishonored. This argument is supported by reference to cases holding that parties may agree to accept a check or bill or note as absolute payment for goods sold, in which case title to the goods will pass upon such acceptance irrespective of whether the paper is honored upon due presentation or not. We think, however, that the facts of this case do not bring it within the principle referred to, for it is quite apparent that the requirement of the vendor that a check should be given by the buyer upon the delivery of the hogs was intended as the equivalent of an insistence upon payment on delivery; in other words, that it was not a sale on credit, nor for the check as such, but that delivery of the animals and payment for them, though such payment might be made by check, were to be simultaneous, and the transaction was understood by the vendee in this sense. The legal situation thus arising can logically be no different from one where the terms of the sale are cash on delivery and a check is accepted by the vendor. In such case it is held that the acceptance of the check is no waiver of immediate payment, and although delivery is made of the goods upon receipt of the check, title thereto does not pass as between the parties unless, upon due presentation, the check is paid.

"A check is accepted as a particular form of cash payment, and if dishonored the vendor may resort to his original claim on the ground that there has been a defeasance of the condition on which it was taken." (Benjamin on Sales, 7th ed., pp. 755–772.)

"If the sale is for cash, and the check of the buyer is taken, this will operate as no more than a conditional payment as well as a conditional delivery; and if upon due presentation of the check it is dishonored the vendor may retake possession of the goods." (23 R. C. L., p. 1448.)

"While a delivery is perhaps the most significant fact as indicating an intention to transfer the title it is not conclusive, and notwithstanding there has been a delivery the property will not pass if it appears that such was the intention of the parties, as when payment is made a condition precedent to the passing of the property." (35 Cyc. 308.)

"The title will not pass until payment if by the terms of the contract such payment is a condition precedent, or if it otherwise appears that such was the intention of the parties, unless the condition as to payment is waived." (35 Cyc. 322.)

"The condition as to payment or security is one which may be waived by the seller, in which case title to the goods sold will vest in the buyer although the condition has not been performed. . . . Whether the delivery is conditional or unconditional depends primarily upon the intention of the parties as shown by all the facts and circumstances of the case, and so it is ordinarily a question of fact for the jury. If the sale is for cash the mere acceptance of a check does not constitute absolute payment or waiver of the condition as to payment. Where the seller delivers the goods conditionally and without any intention of waiving payment or security the property does not pass; and in order to render the delivery conditional within the application of this rule it is not necessary that there should be any express declaration to that effect, but it is sufficient if it appears that such was the understanding of the parties, or that the delivery was made in the expectation of immediate payment, the question being primarily one of intention as shown by all the facts and circumstances of the case. . . . So if the seller delivers on an understanding, express or implied, that he is to receive immediate payment or security he may reclaim the goods, or if he delivers on payment by check instead of cash, and the check is dishonored, he may reclaim the property." (35 Cyc., pp. 327, 328.)

In effect, this sale was for cash as distinguished from a sale on credit, payment to be made, as is customary in similar commercial transactions, by check, and as it was not agreed that the check was to be received as absolute payment, and the delivery of the goods also was conditional,

and the check, upon due presentation, was dishonored, title to the hogs remained in the seller. In *Johnson etc. Co.* v. *Central Bank,* 116 Mo. 558, [38 Am. St. Rep. 615, 22 S. W. 813], it is held that a check given for the purchase price does not constitute payment until the money is actually received by the vendor unless it is otherwise expressly agreed. In *National Bank* v. *Chicago etc. Ry.,* 44 Minn. 224, [20 Am. St. Rep. 566, 9 L. R. A. 263, 46 N. W. 342, 560], it is held that where goods are sold for cash on delivery, and payment is made by check, such check is, in fact, payment only when the cash is received on it, and that there is no presumption that a creditor takes a check in payment from the mere fact that he accepts it from his debtor. The presumption is just the contrary. Such payment is only conditional or a means of obtaining the money. So, in *Hodgson* v. *Barrett,* 33 Ohio St. 63, [31 Am. Rep. 527], it is held that payment by check is a mere mode of making a cash payment; that it is conditional only, and if the check, upon due presentation, is dishonored the vendor may retake the goods from the purchaser.

There is nothing in this record indicating that the original sellers intended to accept Jacobsen's check as absolute payment. True, they were to accept a check in payment for the hogs, but this is the usual method in cash transactions of any magnitude, and it is employed as a matter of convenience and to obviate the necessity of handling and transporting large sums of money with its attendant risks. In the case of *Comptoir d'Escompte* v. *Bresbach,* 78 Cal. 15, [20 Pac. 28], it is said that the language of the manager of the plaintiff bank in stating that a check which was subsequently dishonored, was accepted in payment of the debt sued upon should not be construed as signifying anything more the provisional or conditional payment presumed by law, and is no evidence of absolute payment.

[2] The title to the hogs, therefore, as between the parties to the sale having remained in the original sellers, it follows, we have no doubt, that the fund in the hands of the plaintiff, the purchaser from Jacobsen, constituting part of the purchase price, belongs to the original sellers, Taylor & Rosecrans; and we also entertain no doubt that so far as the attaching creditor is concerned it has no better right

to the fund than Jacobsen himself. (*Ward* v. *Waterman,* 85 Cal. 491, 508, [24 Pac. 930].)

It follows that the judgment should be reversed, and it is so ordered.

Shaw, J., Olney, J., Wilbur, J., Lennon, J., Sloane, J., Lawlor, J., and Angellotti, C. J., concurred.