[Civ. No. 5676.   Third Appellate District.—April 14, 1938.]

FRED W. JAEKLE et al., Appellants, v. EDWARD H. HALTON et al., Respondents.

Nathan F. Coombs for Appellants.

King & King for Respondents.

THOMPSON, J.—In a suit to foreclose a mechanic's lien for materials supplied for two separate buildings on the same property, it was held the lien was waived by conduct which created an equitable estoppel. The claim of lien is for millwork used in constructing two separate buildings simultaneously on the same property under different contracts. A receipted bill for $525 for materials used in the bungalow constructed under the first contract was presented by the contractor to the owners of the property. Relying on that receipt the owners paid the contractor in full. The contractor appropriated the money and drew his personal check in favor of the plaintiffs in payment of the bill. His check was dishonored. The plaintiffs have not been paid. Without notice or knowledge of the dishonoring of the contractor's fictitious check, the owners subsequently paid all claims to which the contractor was entitled. The lien for that amount was disallowed on the ground of equitable estoppel.

Regarding a claim of lien to secure payment of another bill for millwork used in constructing the separate guest house under a subsequent oral agreement, the owners paid the contractor the further sum of $249.50 without a receipted bill from plaintiffs. That money was also appropriated by the contractor, who drew his personal check in favor of the

plaintiffs in payment thereof, which check was likewise dishonored. But the owners had notice on the same day of the dishonoring of this second check. The owners did not make subsequent payments to the contractor, relying upon a receipted bill for this amount. The court, however, found that this claim was also barred by conduct amounting to an equitable estoppel.

The defendants, Edward H. Halton and wife, own an acre of land at Coombsville in Napa County. May 14, 1931, they contracted in writing with the defendant Warren E. Younger to build a bungalow on that land for the agreed price of $3,750. The contract provides that payments for materials should be made to the contractor *only upon receipted bills therefor*. A few days later an oral agreement was made with the same contractor to construct an additional guest house on the same property under similar terms and conditions. Both buildings were built at the same time. The plaintiff furnished all the millwork for both structures. The millwork for the bungalow amounted to $525. The millwork for the guest house came to $249.50 additional. June 24th the contractor, Younger, presented to the owners of the land the bill for millwork on the bungalow for $525, endorsed by the plaintiffs as paid in full. The following day Edward H. Halton gave Younger his check covering that bill, which was cashed by Younger that same day. June 30th Younger presented to the owners of the buildings the plaintiffs' bill for millwork on the guest house for the additional sum of $249.50. This bill was not then receipted, but it was nevertheless paid to the contractor by the owners. This money was also appropriated by the contractor, who drew his personal check for that amount in favor of the plaintiffs on July 22d. This check was also dishonored on the following day. At the time Younger drew his second fictitious check in favor of the plaintiffs they endorsed that bill as paid in full. That receipted bill was presented to the owners on the last-mentioned date. But on that day the owners were notified of the refusal to pay Younger's last check. With respect to the claim of lien for the millwork on the guest house for the sum of $249.50, the owners did not make subsequent payments, relying on that receipted bill. At the time of receiving notice of the dishonoring of the last Younger check on July 22d, the owners had paid all bills accruing under

the contracts for both houses, except the sum of $400 due to other materialmen for obligations already incurred. The last-mentioned bills were afterward paid.

Mr. Halton testified positively that he supposed both bills for millwork had been paid by Younger to the plaintiffs, and that he had no knowledge to the contrary until he was notified of the dishonoring of the Younger checks on July 22d; that he paid Younger the first check for millwork in the sum of $525, relying on the bill receipted by plaintiffs, including that amount, which was then delivered to the owners and retained by them; that believing plaintiffs were fully paid for that work, the owners thereafter, and prior to July 22d, paid to Younger and other claimants all sums of money to which they were entitled under the contract, except as hereinbefore stated; that on June 24th, when the first claim for millwork was paid to Younger, he was then entitled to approximately $800, which was paid to him before the owners had notice of the dishonoring of his checks.

July 24, 1931, notices of the completion of the buildings were recorded by the owners in the office of the county recorder of Napa County, as provided by law. August 19, 1931, within the thirty days' limitation prescribed by section 1187 of the Code of Civil Procedure, plaintiffs filed their notice of claim of lien in due form. This suit was then commenced. The owners of the buildings pleaded, and the court found, that plaintiffs by their conduct waived their right to liens for materials furnished, and that they were estopped from asserting liens by prematurely receipting the bills as fully paid, and by failure to notify the owners regarding the fictitious checks until all of the money due pursuant to the contract had been fully paid or the bills therefor incurred. From the judgment which was rendered accordingly the plaintiffs have appealed.

The only questions presented on appeal are whether a materialman may waive his claim of lien by conduct amounting to an estoppel *in pais*, and whether the facts of this case support the findings that they did so forfeit their right to a lien.

Plaintiffs' bill for millwork furnished on the first contract for the bungalow was presented to Mr. Halton by Younger, the contractor, June 25, 1931. Edward H. Halton drew his check on that date in favor of Younger for the full

amount of that bill. That check was immediately cashed by Younger. On June 29th, Younger drew his personal check in favor of plaintiffs for $525, the full amount of that bill. The plaintiffs presented that check to the bank for payment the following day. Payment of Younger's check was refused for the reason that he had no funds on deposit in the bank. When Younger gave plaintiffs his check for $525 in payment of their bill for millwork on the bungalow they receipted their bill as paid in full·on that date, June 29th. That receipted bill was immediately delivered to Mr. Halton, who assumed it was in satisfaction of that entire transaction. There appears to be some conflict of evidence regarding notice to the owners of the building of the dishonoring of Younger's check. The court, however, found that the owners had no knowledge of that fact until July 22d, prior to which time they had paid the contractor all the money he was entitled to receive under the contract. During that interval, without knowledge of the dishonoring of the Younger check, the owners paid to him the further sum of about $800. After acquiring that knowledge the owners did pay some $400 to other subcontractors for bills previously incurred.

The finding of the court to the effect that the owners had no knowledge of the dishonoring of Younger's check until July 22d is adequately supported by the evidence. Mr. Halton testified positively to that fact. Mr. Fred Jaekle, one of the plaintiffs, testified in that regard:

"The Court: But it is a fact, Mr. Jaekle, that several days elapsed from the time you were notified that the check was not honored by the bank before you got in touch with Mr. Halton at all? The Witness: Your Honor, I done that for the reason I thought, as I say, there would be some money come in perhaps. . . . The Court: But, of course, the fact is, that during the time that elapsed from when you found out that the check was not honored up to the time that you took it up with Mr. Halton, you knew during that interim that Mr. Halton was oblivious of the nonpayment of the bill, while he held a receipted bill, and he was in that situation of holding that receipted bill during that period of time? The Witness: Well, of course, Your Honor, also I figured I was protected under the law. There hadn't been any notice of completion filed and I thought that I had

at least that much grace. . . . Mr. King: Q. In other words, you thought you could make him pay twice? The Witness: No, I didn't.''

█ With respect to the payment of the separate bill for millwork amounting to the sum of $249.50, furnished under a subsequent contract to build the guest house, it appears that the owners of the property were not misled or deceived by a receipt for that amount signed by plaintiffs. No such receipt was procured or presented until the owners were notified of Younger's default. It follows that the lien upon the second building, to secure the payment of that $249.50 bill, was not waived by conduct on the part of the plaintiffs amounting to an equitable estoppel. The facts with respect to that claim of lien are these: That bill of $249.50 was presented to the owners June 30, 1931. It was not then receipted by plaintiffs. It will be recalled the contract provided that claims were to be payable to the contractor by the owners only upon presentation of ''receipted bills''. In spite of that fact, Mrs. Halton drew her check on June 30th in favor of Younger for payment of that bill. We have hunted in vain for evidence of the date when Younger drew his fictitious check in favor of plaintiffs for that amount. Neither party has pointed us to evidence in that regard. But it does appear that the bill for that millwork, in the sum of $249.50, was not receipted by plaintiffs until July 22d. That bill contains this endorsement: ''Received payment, 7–22–31, Jaekle Bros By J. C. Conkright.'' That is the very day Mr. Halton admits that he had notice of the dishonoring of the Younger checks. It thus appears, without conflict, that the owners were not deceived by the receipted bill of the plaintiffs for the amount of $249.50, nor by any other conduct which would create an estoppel with respect to that claim of lien.

We are therefore of the opinion the lien was erroneously denied with respect to the last-mentioned item for materials furnished under the separate contract in constructing the guest house. The lien was properly denied as to the bill for materials amounting to $525, supplied in constructing the bungalow under the original written contract.

█ A materialman may waive his statutory right to a lien by conduct which is prejudicial to the equitable rights of others. (Sec. 1202, Code Civ. Proc.; 40 C. J. 324, sec. 430;

18 R. C. L. 962, sec. 104; *Washburn* v. *Kahler,* 97 Cal. 58 [31 Pac. 741] ; *Botzum Bros. Co.* v. *Brandau,* 20 Ohio App. 508 [152 N. E. 727].) In 40 Corpus Juris, at page 325, it is said:

"A person entitled to a mechanic's lien may be estopped to assert or enforce it in equity by any act which will render it inequitable for him to do so."

In 18 Ruling Case Law, at page 962, it is likewise said:

"The right of a person to assert and perfect a mechanic's lien is a statutory privilege which he may exercise or not, at his pleasure, and a waiver of such right may be inferred from circumstances. . . . The waiver must, however, arise from the consent, express or implied, of the person who would otherwise be entitled to the lien, *or else from such a line of conduct as has estopped him from asserting it.*"

In the Botzum case, *supra,* the Ohio court of appeals, upon facts very similar to those of the present case, regarding the waiver of a lien for $525 on the original contract, held that various lien claimants were estopped from asserting liens against property for the payment of materials furnished. In that case the owner of the property paid the contractor the balance due for the construction of the building upon presentation to him by the contractor of receipted bills for materials from all the remaining lien claimants. A few days later the contractor gave to each claimant a personal check for his proportion of that sum. The checks were drawn upon a bank where the contractor had no money deposited. He then absconded. The owner of the property knew nothing of the fictitious checks until all bills had been paid. The owner was deceived by the presentation of these receipted bills and was thereby led to believe that the lien claimants had been fully paid. The court held that the conduct of the lien claimants who furnished the contractor with false written receipts for their bills for materials which enabled the contractor to defraud the owner of the building created an equitable estoppel barring them from thereafter asserting their liens. The court says in that regard:

"It is clear that one who has executed a written waiver of lien, or a written release, which has been acted on by the owner, and the money disbursed by him in the exercise of ordinary care in reliance thereon, would be precluded from securing a lien."

In support of that doctrine the Ohio court cited cases from Missouri, Utah and Michigan which, in effect, hold that materialmen who execute fictitious receipts showing payment of their claims in full, which are accepted by the owners as true, and in reliance upon which, in the exercise of due care, the owners subsequently pay to the contractors all the money they are entitled to under the contracts thereby waive their liens. These cases appear to be founded upon sound equitable principle.

In the present case, with respect to the lien for $525, except for the fact that the plaintiffs falsely acknowledged by their receipted bills that they had been paid in full, the owners would have withheld payments due the contractor sufficient in amount to cover the cost of that millwork, but which the owners in good faith, without knowledge of the contractor's fraud, subsequently paid to him. The plaintiffs' premature receipt of their $525 bill for materials used in the construction of the bungalow, and their negligence in promptly notifying the owners of the dishonoring of Younger's check, created an equitable estoppel, under the circumstances of this case, precluding them from asserting their claim of lien with respect to that bill. Every necessary element constituting an estoppel *in pais* is present. The findings of the court with respect to the waiver of plaintiffs' claim for $525 are adequately supported by the evidence.

The plaintiffs' lien to secure payment of their separate claim for materials furnished for the guest house in the sum of $249.50 was erroneously disallowed.

The judgment is accordingly modified so as to allow plaintiffs a lien against the property described in the complaint to secure payment of their claim of $249.50 and interest at the rate of 7 per cent per annum, as prayed for, and providing for the foreclosure of that lien to satisfy the judgment for that amount. As so modified, the judgment is affirmed. The appellants may recover their costs on appeal.

Plummer, J., and Pullen, P. J., concurred.