[Civ. No. 7678.   Third Dist.   Feb. 27, 1950.]

R. L. GRIFFIN et al., Respondents, v. W. S. VAN WINKLE, Appellant.

Mancuso & Herron and John Wynne Herron for Appellant.

Lindsay P. Marshall for Respondents.

PEEK, J.—By their complaint plaintiffs sought to recover the contract price for certain doors allegedly sold and delivered by them to the defendants, or in lieu of payment, for the return of the doors. The cause was heard by the court sitting without a jury, and judgment was entered for plaintiffs. Defendant Van Winkle alone appeals.

The complaint is in three counts. The first count alleges that on February 24, 1947, plaintiffs sold and delivered to defendants 627 doors for an alleged agreed price of $6,136.25; that payment for the doors was made by a check executed by Gerald M. Goldstein payable to defendant Collins and endorsed in blank by Collins; that Collins was the agent of defendant W. S. Van Winkle individually, and doing business as Chicago Lumber Company; that when the check was

presented for payment the account upon which it was drawn was closed; and that plaintiffs' demand for payment or a return of the doors was refused by the defendants, excepting 300 of the doors which were returned. The second count incorporates by reference the allegations of the first cause and in addition charges that Van Winkle and Collins were engaged as partners in the business of buying doors. The third is a common count for goods sold and delivered. No appearance was made by Collins. Van Winkle by his answer denied that Collins was his agent; that he and Collins were partners in the business of buying doors or that plaintiffs sold any doors to him. The return of the 300 doors was admitted but he alleged they were returned pursuant to an agreement with plaintiffs that they would assert no claim for the balance of said doors.

The findings of the court were that defendant Collins was the agent of, and joint adventurer with, defendant Van Winkle, individually and doing business as Chicago Lumber Company; that the doors were sold and delivered and payment was made as alleged in the complaint; that plaintiffs' demand for payment or return of the doors was refused, and that the said 300 doors were not turned over to plaintiffs by defendants pursuant to an understanding that plaintiffs would not assert a claim for the balance.

The evidence shows that appellant is engaged in the lumber and construction business at Port Chicago. Approximately six weeks prior to the transaction which forms the basis for the present action he and defendant Collins, who was a carpenter foreman, joined in a business venture which was described by them as being substantially in the nature of a partnership or joint venture. It appears that Collins, because of certain connections, knew where sash and doors could be obtained. Appellant, who was a builder, needed large quantities of such materials, hence they associated together, appellant furnishing the finances and Collins obtaining the materials and selling all in excess of appellant's needs. The profits, if any, were to be divided equally. Pursuant to their agreement Collins arranged for the purchase of a carload of doors from one Goldstein. One-third of the total cost was advanced by appellant to Goldstein as a down payment. Goldstein failed to deliver the doors and after considerable delay appellant and Collins decided, as appellant testified, to "call it all off"; Collins, however, stating that in "the

meantime [he would] keep on looking for Goldstein and the doors.'' Some time thereafter plaintiffs, who were lumber dealers in Lodi contacted Goldstein concerning the sale of some doors which they had. Goldstein in turn communicated with Collins who informed appellant that Goldstein was to obtain some doors from plaintiffs. Collins also informed appellant that Goldstein was to pay him, Collins, for trucking the doors to appellant at Port Chicago.

On the morning of February 24, 1947, Collins arrived in Lodi, inspected the doors and loaded them upon his truck. Goldstein did not arrive until late in the afternoon and did not have with him a cashier's check for the purchase price of the doors as he had promised. Because of his failure to have a cashier's check as agreed, Griffin would not allow the doors to be taken from the premises. However, Collins testified that immediately after loading the doors, or approximately at 11 o'clock a. m. he started for Port Chicago but that a flat tire delayed him; that while he was having lunch it was suggested that he not leave until after Goldstein arrived with a check. Following Goldstein's arrival and after some discussion, an agreement was reached whereby Goldstein issued his personal check to Collins, who in turn endorsed the same and handed it to plaintiffs. The sales slip made out by plaintiffs' bookkeeper, showed the sale as made to the Builders Brokerage Company, which was the fictitious name under which Goldstein operated. During the time the parties were waiting Goldstein's arrival Collins sold approximately 150 of the doors. Payment for the doors so sold was made by check to Collins, who testified that this was a sale by the Chicago Lumber Company, appellant's concern, and that he, Collins, gave the buyer a receipt showing payment to that concern. On cross-examination he testified that his acts in this regard were pursuant to a prior sale by appellant. The remainder of the doors were delivered by Collins to appellant at Port Chicago. Immediately following this transaction Collins and Goldstein left for Portland, Oregon, in search of additional doors. During the course of their trip Collins located a carload of doors which was purchased by appellant.

Approximately 10 days after the transaction in Lodi appellant was informed by plaintiff Griffin that the Goldstein check had been dishonored upon presentment at the bank. It appears that Griffin had previously telephoned to the Chicago Lumber Company inquiring for Collins but at that time he did not inform appellant concerning the Goldstein

check. It further appears that in the interim Goldstein had disappeared and at the time of trial his whereabouts were still unknown. Following the conversation between Griffin and appellant the latter retained 327 of the doors, representing the amount of his down payment in his first transaction with Goldstein and returned the remaining 300 doors to plaintiffs.

Collins' testimony concerning his relationship with appellant at the time of the sale in Lodi was that while he was informed that Goldstein had some doors he did not tell appellant that he was buying the doors for the Chicago Lumber Company; that he would never assume to buy doors without first obtaining consent from appellant; that at all times he considered the sale was made to Goldstein's Builders Brokerage Exchange, and that he only went to Lodi as a truck driver to pick up and deliver the doors.

It is appellant's contention that such evidence does not support the findings, all of which he challenges, except the findings with respect to the execution of the check and the nonpayment thereof. In particular he emphasizes the lack of evidence to show that Collins was his agent or that they were joint adventurers. Appellant further argues that the transaction in Lodi was a sale by plaintiffs to Goldstein and that the delivery by Goldstein of the doors to appellant was pursuant to the preexisting obligation incurred in their first transaction.

Since the uncontradicted evidence shows that the doors were sold by Griffin to Goldstein and not to Collins as the agent of or the coadventurer with Van Winkle, it necessarily follows that the question of the sufficiency of the evidence raised by the parties on these issues is wholly immaterial.

While there may be a question, as the trial judge observed in his memorandum opinion, as to whether or not title to the doors passed from Griffin to Goldstein under the theory of a cash sale, such issue is neither embraced by the pleadings or findings nor has it been argued in the briefs of the parties and hence we do not purport to consider it in this appeal. (See *Clark* v. *Hamilton Diamond Co.*, 209 Cal. 1 [284 P. 915]; *South S. F. Pkg. etc. Co.* v. *Jacobsen*, 183 Cal. 131 [190 P. 628], and 17 So.Cal.L.Rev. 340.)

For the foregoing reasons the judgment is reversed.

Adams, P. J., concurred.

Respondents' petition for a hearing by the Supreme Court was denied April 27, 1950. Carter, J., voted for a hearing.