[Civ. No. 6753. Fourth Dist. June 11, 1962.]

WESTERN SPECIALTY COMPANY, Plaintiff and Respondent, v. CLAIREMONT CONSTRUCTION COMPANY et al., Defendants and Appellants.

Hubert L. Rose for Defendants and Appellants.

Procopio, Price, Cory & Fisher and Emmanuel Savitch for Plaintiff and Respondent.

SHEPARD, Acting P. J.—This is an appeal by defendants from a judgment in favor of plaintiff, decreeing foreclosure of a mechanics' lien.

### FACTS

The facts shown by the record are essentially as follows: Volk-McLain Company, hereinafter called Volk, owned a tract called "Olive Hills," hereinafter called tract, containing 42 lots. Clairemont Construction Company, hereinafter called Clairemont, contracted to build 42 houses thereon. Six of such houses were completed prior to the events leading to the present controversy so only 36 houses are presently involved.

Consumers Plumbing Company, hereinafter called Consumers, became the plumbing subcontractor for Clairemont. Consumers during the period here involved, i.e., August 1, 1958, to September 15, 1958, received all of its plumbing materials from plaintiff Western Specialty Company, doing business as Western Pipe and Supply, hereinafter called Western. Invoices for all the materials were received in evidence and identified as representing materials ordered from Western, sent to the job by Western and installed in the houses by Consumers. The invoices were made out to Consumers. As the work progressed, partial payments were made and lien releases given by Consumers and Western for material and labor represented by the progress payment. A check in the amount of $9,300 was issued by Clairemont on September 18, 1958, for finish materials and labor on lots 1 through 6 and lots 7 through 37. The check was drawn to Consumers and Western. In exchange, therefore, in accordance with a custom theretofore followed by the parties, Western and Consumers delivered to Clairemont a lien release for the labor and materials represented by the check. Payment on the check was stopped by Clairemont after it received the lien release. This action and judgment resulted.

## BUSINESS RECORDS

Defendants first contend that the receipt in evidence of Western's ledger accounts and of the noted invoices, showing a balance of $6,688.85 for materials sold to Consumers for use on the tract was prejudicial error. The records were kept in the usual course of business under the general supervision of the witness; the invoices, materials denoted therein, delivery to and use in the houses constructed on the tract were all verified by other witnesses. (See Code Civ. Proc., § 1953f.) The determination of admissibility rests in the sound discretion of the trial court. The mere fact that other accounts were kept in the same book does not destroy its admissibility. (*Rosati* v. *Heimann*, 126 Cal.App.2d 51, 55 [5] [271 P.2d 953].) The fact that the figure testified to as a total was later written in constitutes a mere matter of computation of accounting. Defendants do not contend that the computation is itself incorrect mathematically. Furthermore, it is not even clear that an objection was made. Certainly the point now made to this court that the records were not kept in the regular and ordinary course of business or that

the witness did not personally make the entries or that he was not qualified, were not mentioned to the trial court. Counsel said,

"I don't see how I can object to their admission into evidence and yet I would like to call your attention to the fact that they are strictly hearsay as to this defendant."

The trial court then referred counsel to the rule admitting business records kept in the regular course of business but counsel still made no objection to foundation.

Here, with no objection voiced on foundation, with the invoices, fact of delivery and use in project all verified by Consumers' construction superintendent, the trial court does not appear to have abused its discretion. Its exercise of this discretion will not be disturbed on appeal. (*People* v. *Grayson*, 172 Cal.App.2d 372, 380 [13] [341 P.2d 820].)

### CONSUMERS' FAILURE TO COMPLETE

Defendants assert that the trial court refused to allow them to prove the facts relating to Consumers' failure to complete the contract, which resulted in defendants' stopping payment on the $9,300 check. The record does not support this claim. On both direct and cross-examination, defendants were given free rein to prove, if they could, that the materials referred to did not in truth go into the construction project. Their principal witness testified that after the job was completed by Consumers, certain defects in the plumbing workmanship were corrected by defendants at a cost of $796.22 and that that was the reason why the $9,300 check payment was stopped by defendants. He was specifically asked and was unable to say, that any of it was due to lack of proper materials delivered by Western. No one testified that the materials were not delivered by Western.

From this evidence the court was entitled to conclude that any deduction from the $9,300 would not exceed $796.22. Western only claimed $6,688.85. Simple mathematics shows that there still remained $8,503.78, far more than enough to cover plaintiff's claim. Any dispute over the $796.22 was a collateral matter concerning only Consumers and defendants. There was of course some generalized opinion evidence from defendants' witness, construction superintendent Wood, from which an inference might secondarily flow that the total of the materials involved in the $9,300 check was less than the amount of $6,688.85. This evidence was never pinpointed to any particular amount. The suggested inference was not com-

plete and was apparently rejected by the trial court. Wood also testified that he knew of no one other than Western who delivered plumbing materials to the project; that the finish materials on 31 lots were covered by the billing which the testimony related to the $9,300 check and that no release at all had been given for finish materials on 5 lots. �In After completion of the argument defendants ask to reopen their case on some matter occurring during the unreported argument. It is not clear just what was being discussed. Ultimately the court stated the matter was collateral, not material to the issue they were talking about and defense counsel stated, "Frankly, I concede that, Your Honor," and the motion was denied.

▮ Reopening for further evidence after argument lies within the sound discretion of the trial court. (Code Civ. Proc., § 607, subd. 3; *Virtue* v. *Flynt,* 164 Cal.App.2d 480, 489 [7a-9] [330 P.2d 879]; *Stewart* v. *Cox,* 55 Cal.2d 857, 866 [11] [13 Cal.Rptr. 521, 362 P.2d 345].) ▮ We find no abuse of discretion.

## RELIANCE ON CREDIT

▮ Defendants next contend that the evidence shows that Western relied on an open account credit to Consumers and not upon possible lien rights and that therefore Western has waived such lien rights. The exhibits were not brought to this court. (Rule 10(b), Rules on Appeal.*) But the testimony shows that all checks were issued to Consumers and Western jointly, that each invoice showed the tract and were signed for by men working at that job. Defendant ignores the testimony of Consumers' job superintendent. While there may have been conflicting inferences, there is no question that the conclusion arrived at by the trial judge, that Western relied on its lien rights, is supported by the evidence.

▮ "When two or more inferences can reasonably be deduced from the facts, a reviewing court is without power to substitute its deductions for those of the trial court. [Citation.]" (*Grainger* v. *Antoyan,* 48 Cal.2d 805, 807 [2] [313 P.2d 848].) (See also *Brewer* v. *Simpson,* 53 Cal.2d 567, 583 [1, 2] [2 Cal.Rptr. 609, 349 P.2d 289].)

The case of *Artel* v. *Riboli,* 91 Cal.App. 757 [267 P. 547], cited by defendant, was one in which the materials were furnished for the contractor's general use with no job identi-

---

*Now Cal. Rules of Court, rule 10(b).

fication. It is not analogous. We are not here dealing with the construction of separate houses for separate owners. The construction of all the houses in the tract was for one owner and was one job. (*Hendrickson* v. *Bertelson,* 1 Cal.2d 430, 433 [2, 3] [35 P.2d 318].)

## RELEASE OF LIEN

■ Defendants claim that Western waived its lien rights to all except five lots. The testimony shows that Western delivered a waiver of lien on all but five lots in exchange for Clairemont's payment of $9,300; that Clairemont delivered its check in that amount, payable jointly to Consumers and Western, and in exchange received a written waiver. But Clairemont promptly stopped payment on the check before Western could put it through the bank. Clearly, the release of lien was dependent, as between the parties, on payment of $9,300. Innocent purchasers for value are not here involved. The principles set forth in Civil Code section 1439 are applicable. As between the parties, enforcement of the performance of concurrent conditions is interdependent on fulfillment of the promise of each party. (*Brant* v. *Bigler,* 92 Cal.App.2d 730, 733 [2] [208 P.2d 47]; *McDorman* v. *Moody,* 50 Cal.App.2d 136, 140, 141 [2-4] [122 P.2d 639].)

It is difficult to understand the position of defendants. By giving the check of $9,300 in exchange for the release of lien, defendants represented that it would be paid on presentation. It was on this representation that the release was executed. The defendants are certainly not innocent holders for value. By stopping payment on the check before it could in due course be presented, they effectively nullified any right to the release. As was said in *South S.F. Pkg. etc. Co.* v. *Jacobsen,* 183 Cal. 131, 134, 135 [190 P. 628]:

" 'A check is accepted as a particular form of cash payment, and if dishonored the vendor may resort to his original claim on the ground that there has been a defeasance of the condition on which it was taken.' [Citation.]

" 'If the sale is for cash, and the check of the buyer is taken, this will operate as no more than a conditional payment as well as a conditional delivery; and if upon due presentation of the check it is dishonored the vendor may retake possession of the goods.' [Citation.]

" '. . . So if the seller delivers on an understanding, express or implied, that he is to receive immediate payment or security he may reclaim the goods, or if he delivers on payment by

check instead of cash, and the check is dishonored, he may reclaim the property.'" See also *Clark* v. *Hamilton Diamond Co.*, 209 Cal. 1, 3 [1] [284 P. 915]; *Goodman* v. *Williamson,* 45 Cal.App. 664, 666 [1] [188 P. 291]; *Galeppi* v. *C. Swanston & Son,* 107 Cal.App. 30, 34 [1] [290 P. 116].

*Washburn* v. *Kahler,* 97 Cal. 58 [31 P. 741]; *J. & W. C. Shull* v. *Doerr,* 110 Cal.App. 613 [294 P. 464]; *Jaekle* v. *Halton,* 25 Cal.App.2d 706 [78 P.2d 441]; *Westwood Bldg. Materials Co.* v. *Valdez,* 158 Cal.App.2d 107 [322 P.2d 79], and *Edwards* v. *Curry,* 152 Cal.App.2d 726 [313 P.2d 613], are cited by defendants. The *Washburn* and *Shull* cases involved false receipts to deceive an innocent owner. In the *Jaekle* case actual deceit of an innocent owner occurred. In the *Westwood* and *Edwards* cases the checks were paid in full. The cited cases are not in point.

Section 1962 of the Code of Civil Procedure provides for conclusive presumptions; paragraph 3 reads as follows: "Whenever a party has, by his own declaration, act, or omission, intentionally and deliberately led another to believe a particular thing true, and to act upon such belief, he cannot, in any litigation arising out of such declaration, act, or omission, be permitted to falsify it."

Thus, estoppel becomes available against a party to assert a fact under the following conditions (18 Cal.Jur.2d 406-407):

"(1) the party to be estopped must know the facts;

"(2) he must intend that his conduct shall be acted on or must so act that the party asserting the estoppel has a right to believe it is so intended;

"(3) the latter must be ignorant of the true facts; and

"(4) he must rely on the former's conduct to his injury." (See also *Safway Steel Products, Inc.* v. *Lefever,* 117 Cal.App. 2d 489, 491 [1] [256 P.2d 32]; *California Cigarette Concessions* v. *City of Los Angeles,* 53 Cal.2d 865, 869 [4] [3 Cal. Rptr. 675, 350 P.2d 715].)

If estoppel could be said to apply at all, in its true sense, the beneficiary would be Western, not defendants. Defendants represented the check would be paid; they intended the representation to be acted on by the delivery to them of the release; Western was ignorant of any intent on the part of defendants to stop payment on the check; Western relied on defendants' representation that the check would be paid. It thereupon delivered the lien release which, if enforced, would

be to Western's damage. In any event, we have here a failure of consideration caused by the deliberate act of defendants in stopping payment of the check. Whether we view it as a case in which conditional title did not pass or as estoppel, we think defendants ought not to be permitted to set up the release in bar of Western's claim.

The judgment is affirmed.

Coughlin, J., concurred.