[Civ. No. 4624. Fourth Dist. May 27, 1953.]

CURTIS T. PRUETT, Respondent, v. ROBERT BURR et al., Defendants; THE SHERWIN-WILLIAMS COMPANY (a Corporation), Appellant.

Ray W. Hays and James W. Hays for Appellant.

Wingrove & Brown, Meredith Wingrove and Lee G. Brown for Respondent.

GRIFFIN, J.—Plaintiff and respondent brought this action for damages against defendants Robert Burr, Central Valley Cooperative, a corporation, hereinafter referred to as CVC, Estate of J. A. (Tex) Rankin, and R. S. Norswing, copartners doing business as Rankin Aviation Industries, and the defendant and appellant Sherwin-Williams Company, a corporation (hereinafter referred to as appellant). The damage occurred to respondent's cotton crop and was alleged to have been the proximate result of the negligence of defendants in manufacturing, selling, and spraying, by airplane, the cotton crop of defendant Burr with a spray containing a product produced by appellant which was injurious to cotton plants. Respondent owned about 15 acres of land planted to cotton. Directly north of his acreage was a 40-acre piece of land belonging to defendant Burr. About July 16, 1949, defendant Burr discovered Lygus bugs or cotton daubers in his cotton. On advice of the agents of defendant CVC, of which Burr was a member, he determined to spray it. The spray was purchased through defendant CVC, which had a consignment agreement with appellant Sherwin-Williams Company, who manufactured it, whereby CVC paid appellant each month

for material that was used. The spray material was labeled "DDTOL 25% Emulsifiable." It was contained in 30-gallon steel nonreturnable drums and had been stored in CVC's warehouse since the 1948 season. On July 16, 1949, CVC delivered five drums to defendant Rankin Aviation Industries to be mixed with water in a specially prepared mixing tank and put in Rankin's airplane, equipped with a rotary brush type sprayer, and sprayed on Burr's cotton. The course pursued was in a general northerly and southerly direction back and forth over Burr's cotton field. In banking and making the turn the pilot of the airplane flew over respondent's cotton field and a considerable amount of the spray fell on his acreage. The wind also drifted some of the spray released on the Burr property over the respondent's cotton field. Respondent's cotton crop was heavily damaged and burned along the north side of his acreage. Burr's crops were likewise damaged. Expert witnesses agreed that the damage resulted from spraying and that the damage noticed was the result of the presence of a chemical compound known as 2,4-D or one of its derivatives such as 2,4,5-T, which is a plant hormone stimulating the growth of plants, but which has an adverse effect on broad-leaf plants and particularly cotton.

The damage to the plants was immediately noticeable and increased over the period of growth. Samples from the various containers used, and others not opened, were taken by the several parties and chemical tests were made. Respondent relies principally upon a report of the State Department of Agriculture contained in a letter from that department dated October 24, 1949 (Plaintiff's Exhibit 1), and plaintiff's Exhibit 2, which were received in evidence over objection. These exhibits indicate that certain tests were made of certain samples taken, and that a harmful plant hormone, probably 2,4,5-T, was present in the samples analyzed. The merits of this objection will be discussed later.

A motion for nonsuit was denied. Thereafter defendants testified and produced certain witnesses in their own behalf who endeavored to exculpate themselves from liability and claimed lack of knowledge of the presence of any type of substance harmful to cotton plants. Appellant produced a chemist who visited the property and took samples from the Burr containers. He testified that respondent's and defendant Burr's cotton had been affected by a chemical compound known as 2,4-D, or one of its derivatives; that quantities as low as one part per million would cause damage to cotton; that

from an analysis of samples taken from three of the barrels it conformed to the statement on the label on the drums and that those samples showed no 2,4-D was present; that to verify his analysis he later obtained four or five samples of the same lot number from CVC; that field tests on cotton were made with it and the presence of 2,4-D was not indicated.

The manager of CVC testified that the State Department of Agriculture gave him a report on samples taken from the contents of unopened drums left in its stock, which were of the same lot number as those used on the Burr job, and that the report was that no 2,4-D was found.

There was testimony to the effect that about 11 other growers had used DTOL in 1949, and that there were no complaints received from the growers. The jury returned a verdict in favor of respondent and against the Sherwin-Williams Company for $1,068.38, and in favor of the remaining defendants.

At respondent's request the jury was instructed on the doctrine of res ipsa loquitur in six separate instructions, following generally the language contained in instructions 206-B and 206-C, pages 321-322, California Jury Instructions Civil (B.A.J.I.). No particular objection is made to the form of instructions except that it is contended that only one of them stated that more was required than the mere happening of the accident to give rise to the inference of res ipsa loquitur, and that therefore the court erred in its failure to more forcefully point out to the jury that before the doctrine of res ipsa loquitur could be applied it was necessary for respondent to show that he did not suffer damages at the hands of persons other than the defendant, citing *Gordon* v. *Aztec Brewing Co.*, 33 Cal.2d 514, 519 [203 P.2d 522]; *Zentz* v. *Coca-Cola Bottling Co.*, 92 Cal.App.2d 130, 133 [206 P.2d 653]; and further, that one instruction was erroneous because the jury was told that a mandatory rather than a permissive inference arose from the occurrence of the damage, citing *Hardin* v. *San Jose City Lines, Inc.*,* (Cal. App.) 252 P.2d 46.

Appellant's main claim, however, on this particular point is that the instructions on that subject should not have been given at all because the evidence did not, particularly as to appellant, show that the requirements for the introduction of the doctrine were met in this, that before it may be applied,

---

*A hearing was granted by the Supreme Court on March 12, 1953.

it must be shown that the accident or injury was caused by an agency or instrumentality within the *exclusive* control of the defendant (appellant); that when, on the face of plaintiff's own evidence, it appears that the injury may have resulted from any one of two or more causes, for one of which the defendant may not have been responsible, plaintiff is not entitled to the benefit of the doctrine, citing *Ybarra* v. *Spangard*, 25 Cal.2d 486, 489 [154 P.2d 687, 162 A.L.R. 1258]; *Gordon* v. *Aztec Brewing Co.*, 33 Cal.2d 514, 526 [203 P.2d 522]; *Zentz* v. *Coca Cola Bottling Co.*, 39 Cal.2d 436 [247 P.2d 344]; *Knell* v. *Morris*, 39 Cal.2d 450, 453 [247 P.2d 352]; and Note, California Jury Instructions Civil [B.A.J.I.], page 315.

In this respect, it is argued that if respondent had sued the appellant alone in the instant case the doctrine would not have been available to him because the instrumentality had passed through several hands, for whose actions appellant would not be responsible, and its condition had been changed; that therefore it is possible that the accident was caused by the negligence of someone other than appellant; that to allow the respondent to reply upon res ipsa loquitur in this case would be to say that he can bring in as parties defendant all who handled the instrumentality and thereby use the doctrine against the appellant when it could not have been otherwise available; that the instrumentality had been handled by many others after it had left the appellant's possession; that while many of these persons were made defendants in this action and introduced evidence to show that they had not improperly handled appellant's product, the possession of the instrumentality had been changed; that the instrumentality had long been out of appellant's possession; that appellant had no control over mixing this spray; and that appellant had no superior knowledge of what occurred.

In reply respondent relies principally upon the doctrine as announced and applied in the late case of *Zentz* v. *Coca Cola Bottling Co.*, 39 Cal.2d 436 [247 P.2d 344]. It was there stated, in reference to the contention that the instrumentality must be in the exclusive control of defendant before the doctrine is applicable, that the purpose of the requirement that the defendant must have management or control of the agency or instrumentality which caused the injury was to eliminate the possibility that the accident or injury was caused by someone other than the defendant and that its use is merely to aid the courts in determining whether, under the

general rule, it is more probable than not that the injury was the result of defendant's negligence; that the requirement of control is not an absolute one and ordinarily will not apply if it is equally probable that the negligence was that of someone other than the defendant, yet the plaintiff need not exclude all other persons who might possibly have been responsible where the defendant's negligence appears to be the more probable explanation of the accident; that the fact that the accident occurred sometime after the defendant relinquished control of the instrumentality which caused the accident does not preclude application of the doctrine provided there is evidence that the instrumentality had not been improperly handled by the plaintiff or some other third person, or its condition otherwise changed, after control was relinquished by the defendant. However, in this connection, it must appear that the defendant had sufficient control or connection with the accident or injury so that it can be said that he was more probably than not the person responsible for plaintiff's injury. Another factor may be that the defendant may have superior knowledge of what occurred and that the chief evidence of the cause of the injury may be accessible to the defendant but inaccessible to the plaintiff, and that the doctrine may be applied even though the defendant is not in a better position than the plaintiff to explain what occurred if it appears more probable than not that the injury resulted from negligence on the part of the defendant. It then stated that the doctrine was applied in certain specific unusual situations where there was clearly a probability that one or more of several persons was negligent but where the plaintiff was unable to point out which of them was responsible for his injury such as *Ybarra* v. *Spangard*, 25 Cal.2d 486 [154 P.2d 687, 162 A.L.R. 1258], where a patient received injuries while unconscious and in the course of medical treatment. It was there held that all persons having any control over his body could be properly called upon to give an explanation of their conduct.

The Zentz case also stated that the doctrine may be applied against several defendants where the circumstances are such as to show a probability that all of them were negligent. It then concluded that, as a general rule, res ipsa loquitur applies where the accident or injury is of such nature that it can be said, in the light of past experience, that it probably was the result of negligence by someone and that the defendant is probably the person who is responsible; that in determining

whether such probabilities exist with regard to a particular occurrence the courts have relied both upon common knowledge and the testimony of expert witnesses, and they have considered the circumstances relating to the accident in each particular case, such as the extent of control exercised by the defendant, the plaintiff's own conduct, the likelihood of negligence by some third person, and, in some situations, evidence that the defendant is better able than the plaintiff to explain what happened; and that all of these matters have been treated as aids to help the courts in determining whether the accident was of such a nature that the injury was more probably than not the result of the defendant's negligence. (See, also, *Knell* v. *Morris,* 39 Cal.2d 450, 455 [247 P.2d 352].)

In *Cavero* v. *Franklin Gen. Benev. Soc.,* 36 Cal.2d 301 [223 P.2d 471], where the defendant hospital, as well as doctors and a nurse anaesthetist were sued for the wrongful death of a child while having its tonsils removed, and where the jury exonerated the doctors and held the hospital liable, it was held that it was not error to give an instruction on the res ipsa loquitur rule as to all defendants, where the jury accepted the explanatory evidence exculpating the doctors but not the hospital.

In the present case it seems clear that the injury complained of would not have occurred without negligence by someone other than the respondent. It is equally clear that such injury was one that in the ordinary course of things does not happen and was, in all probability, due to the application of chemical spraying; that appellant, as well as the defendants were in a better position than respondent to explain what happened; that the chief evidence of the cause of the injury was accessible to defendants and not to respondent; that appellant had sufficient control or connection with the cause of the injury; that it was more probable than not that it was the one responsible for the injury to respondent's cotton crop and was the one called upon to give an explanation of its conduct; and that the circumstances were such as to show probability that all of the defendants were negligent.

We therefore conclude that there was sufficient evidence to submit to the jury the question whether sufficient facts had been established for the application of the doctrine as to all defendants, and that it became incumbent on each defendant to explain his participation therein if he or it sought to avoid the inference of res ipsa loquitur. It appears that the defendants, excepting appellant, did explain their activities to the

satisfaction of the jury and that each produced positive evidence to show that they had no knowledge of and were not responsible for the presence of the contaminating substance which damaged the cotton crop. It affirmatively appears that appellant did not meet, to the satisfaction of the jury, the burden placed upon it, although there was evidence produced by it in conflict with the inference.

The instructions given on the res ipsa loquitur doctrine, when considered as a whole, are not open to the criticism suggested. Some of the instructions recite, in language to this effect, that "From the occurrence of the damage involved in this case as established by the evidence, there arises an inference that the proximate cause of the occurrence was some negligent conduct on the part of defendants and if the inference preponderates over contrary evidence it warrants a verdict for the plaintiff." The court gave appellant's instruction reciting that ". . . the mere happening of an accident is not sufficient to enable the plaintiff to recover, but the burden is upon the plaintiff to show that the defendants were guilty of negligence which was the proximate cause of the injury." Proximate cause is then defined in the usual form and included therein is a statement: "It may operate directly or through intermediate agencies or through conditions created by such agencies." The court then instructed that those given instructions on res ipsa loquitur "may appear to constitute an exception to the general rule that the mere happening of an accident does not support an inference of negligence. The instruction, however, is based on a special doctrine of the law which may be applied only under special circumstances, they being as follows:" Then follow certain conditions which must be established before the doctrine may be applied. This is followed by the statement: "When all these conditions are found to have existed the inference of negligence to which they give birth may support a verdict for the plaintiff, in the absence of a showing by defendants that offsets the inference." This instruction is followed by one reciting that "If you find that the plaintiff . . . has been damaged and injured by the presence of 2,4-D or 2,4,5-T in a spray material applied to or drifting over and upon his growing cotton crop in the year 1949, then an inference of negligence arises and you are instructed that it is incumbent upon the defendants to explain how the loss occurred and by what reason they are not responsible for such damage." The statement in the instructions here given, which in part recite that "from

the occurrence of the accident in this case, as established by the evidence, there arises an inference," has been criticized where the evidence shows that the application of the inference by the jury should be only permissive. (*Anderson* v. *I. M. Jameson Corp.*, 7 Cal.2d 60 [59 P.2d 962]; Prosser on Res Ipsa Loquitur in California, 37 Cal.L.Rev., pp. 217, 231.)

Section 1958 of the Code of Civil Procedure provides that an *inference* is a deduction which the reason of the jury makes from facts proved, without an express direction of law to that effect. Section 1959 of the Code of Civil Procedure provides that a presumption is a deduction which the law expressly directs to be made from particular facts. In many of the reported cases it has been held that a permissible inference of negligence arises only upon the establishment of facts sufficient to support such an inference and the jury is permitted to accept the inference, i. e., it is not compulsory and if it sees fit to find for the defendant, even if the inference does arise, it is free to do so. Exceptional cases have held that under a given set of facts, where the inference is strong, it may be compulsory to accept the inference. (*Druzanich* v. *Criley*, 19 Cal.2d 439 [122 P.2d 53]; *Morris* v. *Morris*, 84 Cal.App. 599 [258 P. 616]; *Pillars* v. *R. J. Reynolds Tobacco Co.*, 117 Miss. 490, 500 [78 So. 365, 366].) As distinguished from a permissible inference, a different rule seems to apply to a presumption.

The instructions given sufficiently state the general rules in reference to what facts must be established before the rule is applicable. There was no request by defendants for additional instructions further qualifying this general rule. Under the facts here related no prejudicial error resulted in giving the instructions indicated (*Mudrick* v. *Market Street Ry. Co.*, 11 Cal.2d 724 [81 P.2d 950, 118 A.L.R. 533].)

A more serious question arises in reference to the admissibility of the letters, plaintiff's Exhibits 1 and 2, setting forth the information contained therein which indicates that certain tests were made by the State Department of Agriculture, Bureau of Chemistry, and a certain result was obtained indicating the presence of 2,4-D, or 2,4,5-T.

It is respondent's contention that these exhibits were admissible under sections 1888-1894, and sections 1953(e)-1953 (h), Code of Civil Procedure, Uniform Business Records as Evidence Act, added by Statutes 1941, chapter 482, section 1. Section 1953(f), Code of Civil Procedure, provides:

"A record of an act, condition or event, shall, in so far

as relevant, be competent evidence if the custodian or other qualified witness testifies to its identity and the mode of its preparation, and if it was made in the regular course of business, at or near the time of the act, condition or event, and if, in the opinion of the court, the sources of information, method and time of preparation were such as to justify its admission.''

Appellant's claim is that the exhibits are hearsay, not the best evidence, and. that no proper foundation was laid for their admission into evidence; that accordingly the ruling of the trial court admitting them was prejudicial error under the circumstances related since this was the only evidence indicating the presence of 2,4-D, as opposed to the contrary sworn testimony of a chemist testifying for appellant.

In *Loper* v. *Morrison,* 23 Cal.2d 600 [145 P.2d 1], the trial court rejected the offer into evidence of a nurse's chart pertaining to a patient. The Supreme Court recited therein the general rule that it is the object of the business records statutes to eliminate the necessity of calling each witness and to substitute the record of the transaction or event, and that it is not necessary that the person making the entry have personal knowledge of the transaction; that such record is competent evidence if authenticated in the prescribed manner, and if in the opinion of the court the source of information, method and time of preparation were sufficient to justify its admission. It was there held that while the nurse's chart did contain relevant evidence on the issue of the nature and extent of plaintiff's injuries, the Supreme Court could not say that its exclusion resulted in a miscarriage of justice.

In *Palmer* v. *Hoffman,* 318 U. S. 109 [63 S.Ct. 477, 87 L.Ed. 645, 144 A.L.R. 719], the Supreme Court held that where the engineer of a train, who died before the trial, made a written statement covering the cause of an accident, it was not admissible under a similar federal act because it was not made as a part of the ''regular course of business'' of the company.

*Nichols* v. *McCoy,* 38 Cal.2d 447 [240 P.2d 569], involved the question of the admissibility of the record of the coroner's office pertaining to certain tests made as to the presence of alcohol in the decedent's blood. The court there held that where sufficient foundation had been laid by the evidence, as there indicated, the report would have been admissible. In that case, however, there was detailed evidence by the head toxicologist for the coroner as to what was done and a more

minute foundation laid for the admission of such a report into evidence. In that case there was sufficient additional evidence that the blood in the bottle labeled with decedent's name was his blood. Strong dissenting opinions were there filed reciting "that we should be more concerned with reliable and accurate evidence than with convenient methods of producing it," and (see footnote, p. 450) that the holding in that case "sets one more flagstone in the path departing from established standards," and as "impingements on federal constitutional guaranties." Therein, *McGowan* v. *City of Los Angeles*, 100 Cal.App.2d 386 [223 P.2d 862, 21 A.L.R.2d 1206], was cited and distinguished because it was there the opinion of the trial court that the source of information, method and time of preparation of the record in question were not such as to justify its admission. There, neither the embalmer nor any other witness from the mortuary testified as to the procedure followed in taking blood samples, and the court on appeal held that the trial court was justified in concluding that the proper foundation had not been laid.

The question here presented, then, is whether the exhibits received in evidence were, in fact, competent, relevant, and a record of an act or event where the custodian thereof or other qualified witness testified to their identity and mode of their preparation and whether they were made in the regular course of business, at or near the time of the act or event.

Exhibit 1 is but a letter, apparently written on the letterhead of the State Department of Agriculture, by a field supervisor (to Mr. Haupt, Agricultural Commissioner at Hanford) and contains what the writer denominates "copy of the memorandum on the subject of 2,4-D, injured cotton of Robert Burr." The letter contains many statements which are purely hearsay, and if the writer thereof were personally present and testified at the trial, which he was not, he would be precluded from testifying in relation to many of the statements contained therein on that ground. Attached to the letter is a two-page memo initialed "M.R.P." apparently intended for Murray R. Prior. It recites that Haupt and the writer inspected Burr's cotton crop near Hanford and found it to be affected with 2,4-D; that Burr said he wanted him (the field supervisor) to confirm these findings at a contemplated trial and that he said he would be available as a witness. He then relates in detail what he did, what the several contentions of the respective parties were, and who might be at fault; that he advised that samples of the residue of insecti-

cide be obtained and forwarded to the Bureau of Chemistry for analysis.

Exhibit 2 is entitled "Memorandum, Department of Agriculture—To—Allen B. Lemmon, from—L. R. Gillogly." It recites that according to the memorandum of Mr. Pryor, Pryor visited the Burr ranch; that he reported the injury and that "it is suspected that an insecticide treatment—by the Rankin Crop Dusting Concern—was contaminated with a plant hormone"; that "crop dusters state that the airplane sprayer used had never been used with 2,4-D but was reserved for insecticides alone"; that the Sherwin-Williams Company maintained (according to Mr. Haupt) that their product DDTOL, 25 Per Cent Emulsifiable, was free of contamination up and until the time it was shipped by them; that "according to Mr. Pryor's memo, Mr. Burr said that the cotton was treated on September 17, 1949"; that Mr. Scott stated the date to be August 21, 1949; that Pryor said one sample was taken "from five 30-gallon barrels on the air strip" and the other from two 30-gallon unopened barrels in the dealer's warehouse, and that he (Mr. Pryor) obtained a second sample from "what appeared to be the same empty barrels." Then the writer sets forth the nature of certain laboratory tests made pertaining to these samples. Neither Mr. Pryor nor Mr. Gillogly were witnesses at the trial.

The only foundation testimony concerning these exhibits was that of the Agricultural Commissioner, Mr. Haupt, who testified he and Pryor went to view the damaged fields; that they requested a Mr. Scott, of the State Bureau of Chemistry, to obtain samples of the material used; and that Exhibit 1 mentioned herein was a copy of a letter and memo received by him from the Bureau of Chemistry in connection with his official duties. As to Exhibit 2, counsel for plaintiff merely announced to the court that it was a memo of the State Department of Agriculture directed to one Allen B. Lemmon from L. B. Gillogly, with a notation "cc to L. O. Haupt." None of the parties named were witnesses at the trial.

Defendant Burr's Exhibit E was received in evidence over objection of appellant. It was a copy of a letter in reply to a request by Mr. Rempel of the Twining Laboratories for information from Mr. Lemmon of the Bureau of Chemistry pertaining to samples suspected of being contaminated with 2,4-D, in which he stated that the available information he had was only suggestive and that he had no conclusive evidence that the material used by Mr. Burr contained 2,4-D;

that the sample taken from the opened container could not be considered official unless it was taken from an unopened container filled by the manufacturer; that, however, some of the residue left in the barrels was taken and found to contain DDT 25-48 per cent, which conformed to the guaranteed analysis, but that there was some evidence that it was contaminated with 2,4-D or 2,4,5-T, and that official samples taken by their inspector from unopened drums found in the dealer's stock in Hanford, showed the same indications.

Rempel testified Mr. Lemmon was chief of the State Bureau of Chemistry, and that he received the original of the copy of the letter that went into evidence, about May 5th, when he was making some tests from samples obtained by him, in connection with his unsuccessful endeavor to substantiate Mr. Lemmon's findings. There was no further evidence as to a foundation for the admission of the document.

In *Dobson* v. *Industrial Acc. Com.*, 114 Cal.App.2d 782 [251 P.2d 349], it was said (quoting from syllabus 2) that ''Testimony that a blood sample contains alcohol without some evidence to show that the blood is that of the person charged with being intoxicated amounts to no proof at all that he was.''

In *Everts* v. *Matteson*, 68 Cal.App.2d 577 [157 P.2d 651], it was held that a communication from a person who had been employed to appraise realty was not a corporate record, under Civil Code, section 371, nor was it admissible in evidence merely because the employer had it among his papers.

In *City of Stockton* v. *Vote*, 76 Cal.App. 369, 396 [244 P. 609], it is said: ''No section of the Political Code relating to the department of public works has been called to our attention that would make the report by a subordinate officer or field officer to his superior, or whatever designation may be applicable to the position occupied by Mr. Barnes, a public document admissible in evidence in controversies between independent parties. These considerations show the opinions and statements of Mr. Barnes to be mere hearsay so far as this case is concerned and wholly inadmissible.''

In 20 American Jurisprudence, page 866, section 1027, it is remarked that: ''. . . a record of a primary fact made by a public official in the performance of official duty is, or may be made by legislation, competent prima facie evidence as to the existence of that fact, but records of investigations and inquiries conducted either voluntarily or pursuant to requirement of law by public officers concerning causes and

effects, and involving the exercise of judgment and discretion, expressions of opinion, and the making of conclusions, are not admissible in evidence as public records."

To the same effect is 153 American Law Reports, page 166, where it is said: "Notwithstanding the general rule that public records and reports are admissible in evidence, the courts almost universally exclude statements contained in such reports or records concerning the cause of or responsibility for an injury to the person or damage to property." The reason for this exception, stated at page 167, is that "One ground on which such a report is excluded is that the statement as to the cause of or responsibility for the occurrence is a mere statement of opinion, and that since the officer or employee would not be permitted to state his opinion if on the witness stand, there is all the more reason for excluding his statement of opinion when he is not under oath and is not subject to cross-examination."

The exceptions to the general hearsay rule are the official records and reports which public officers are required to keep or make, either by statute or by the nature of the duties of their office. (20 Am.Jur. 767.) Under sections 1918, 1920 and 1926 of the Code of Civil Procedure, if they are the type of records meant and are proved as required, the entries are prima facie evidence of the facts stated therein.

22 California Jurisprudence, page 576, section 4, defines public records as "All documents or records which are required by law to be kept by a public officer, or which he keeps as necessary or convenient to the discharge of public duties."

Even if these documents may be, under a proper showing, considered as official documents, there is no sufficient foundation laid that such documents are the ones kept as part of the regular function of the office by some department of the government or such as are authorized by the Legislature. In the first place, the offered letters were not shown to be originals, nor were they certified as copies by any legal custodian thereof. They are not such a report as is made legal evidence by any statute. (*City of Los Angeles* v. *Watterson,* 8 Cal.App.2d 331 [48 P.2d 87].)

We conclude that these copies are not public records within the meaning of sections 1920-1926 of the Code of Civil Procedure. They are not entries made in public or other official books or records as required by those sections, but are only letters by officials to third persons, and copies of interdepartmental memorandums.

As to the claim that they fall within the Uniform Business Records as Evidence Act, it first must be established by competent evidence that these exhibits fall within that class. If they were business records of anyone, it was the State Department of Agriculture. There is no evidence by any person from that department or anyone qualified to testify to this effect. There was no testimony as to their mode or time of preparation, nor identifying them as business records made in the regular course of business. We do not believe that it was the intent of the act to make all correspondence received by a businessman admissible in evidence merely because it might pertain to his business. If this were so, any written hearsay evidence concerning business matters would be competent evidence. It is clear that there was no competent evidence that the samples analyzed were taken from the particular drums here involved. The only evidence was hearsay evidence contained in the writings themselves. (*Miles* v. *A. Arena & Co.*, 23 Cal.App.2d 680 [73 P.2d 1260].) It is also apparent that oral testimony by the author of the letters would have been inadmissible on this subject, as hearsay. These letters then should not, at least without laying the proper foundation as required by the statute, rate higher in the scale of evidence.

In an article by Professor William C. Hale, in 14 Southern California Law Review, page 99, pertaining to the admission of hospital records under this act, it is said, at page 101 et seq.:

". . . formal requirements for business entries are equally applicable to hospital records, viz.: that the entries should be original entries, contemporaneously made, based upon personal observation, and properly verified in court. (Citing cases.) The latter requirement looks normally to the calling of the person or persons who made the record, or a showing of nonavailability and the production, in the latter event, of someone sufficiently advised as to the identity of the records and the methods of keeping them." After reciting many of the instances where the courts have excluded records, the author states: "These illustrations indicate that those courts that extend the business entries exception to cover hospital records insist on the well established and formalistic foundation requirements of that exception."

Counsel for plaintiff argue that, by the admission into evidence of the exhibits, the expenses to the plaintiff and to the state were kept down by reason of the cost of producing witnesses employed by the state or the cost of taking their

depositions; that the small sum here involved fully justified the court's action in holding that they were admissible.

While the judgment may appear to be just and comparatively small, and considerable expense might well be saved in not producing the testimony of witnesses in respect to the foundation, the rules of evidence should not be relaxed for these reasons alone. The statutory requirements necessary to have a writing admitted as a business record, official record or a public writing should be met. Otherwise, all legal barriers heretofore established by the law protecting one's right to be confronted by witnesses and the right to cross-examination, might well vanish under these exceptions.

It has been said that where the question whether a proper foundation has been laid for admitting a document under this act is debatable, and there is some evidence from which a reasonable deduction can be made that the proper foundation has been laid, the determination of such question is for the trial court. (Uniform Laws Annot., 9 Misc. Acts, p. 393, n. 20.) It does not appear to us under the evidence here produced, that the question as to whether or not the proper foundation had been laid was debatable.

Assuming, then, that the jury was permitted to apply the doctrine of res ipsa loquitur under the facts established, and that an inference of negligence of appellant arose, appellant was then called upon to meet that inference. Appellant produced competent evidence, under oath, that the samples taken from the product originally furnished by it contained no 2,4-D type of substance. The only evidence opposed to this, other than the circumstances themselves and the possible inference of negligence arising therefrom, are the opinions, conclusions, and hearsay evidence set forth in the exhibits. Since we conclude that the exhibits were erroneously admitted, for the reasons stated, we are unable to conclude, as suggested by plaintiff, that the error was not prejudicial because of the operation of the res ipsa loquitur rule.

The facts related in the exhibits, no doubt, had a great influence on the jury in arriving at its verdict in relation to defendant's alleged liability. The motion for new trial should have been granted. Since the judgment must be reversed, there is no necessity at this time to pass upon certain novel questions presented pertaining to the allowance of certain costs to the plaintiff.

Judgment reversed.

Barnard, P. J., and Mussell, J., concurred.