[Civ. No. 29170.   Second Dist., Div. Four.   Jan. 26, 1967.]

HARRY J. GEE et al., Plaintiffs and Respondents, v. ANTHONY A. TIMINERI, Defendant and Appellant.

140

Richard E. Hodge and H. Walter Croskey for Defendant and Appellant.

James F. Ball for Plaintiffs and Respondents.

JEFFERSON, J.—Harry Gee and Harry Gee Associates, Inc. (whom we shall refer to in the singular since Harry Gee is the owner and principal officer of the corporation) brought an action based on a common count for money had and received, seeking a judgment against defendant Anthony Timineri in the amount of $11,000. Plaintiff's claim arose out of, and was based on, a contract entered into between the parties which purported to settle a dispute between them concerning their former joint business relationship. Defendant answered with a general denial and filed a cross-complaint alleging two causes of action for breach of contract. The contract was introduced and evidence presented on each side. The trial court gave a judgment, based on the contract, in

plaintiff's favor in the amount of $2,115.48. Defendant appeals.

The following background facts are undisputed: Plaintiff and defendant were manufacturing representatives engaged in the promotion of the products of various manufacturers (hereafter referred to as principals.) The business consisted in locating markets for the principals' products and in obtaining purchase orders; commissions were paid by the principals when the orders were filled and paid for by the buyers. Before March 6, 1961, both plaintiff and defendant were independently engaged in this business. On March 6 they entered into a verbal agreement to pool their efforts and business contacts. It was intended that eventually defendant would hold a joint interest in plaintiff's corporation. The principals which each had formerly independently represented were brought into the common business. The offices of plaintiff's corporation were used for the new arrangement. It was agreed that the commissions earned from what were formerly defendant's principals would be split 50-50; that defendant would receive a certain salary and commission upon the earnings received from plaintiff's principals.

The joint relationship continued for approximately seven months when, on November 8, 1961, because of personality conflicts which arose between the parties and a dispute concerning defendant's obligation to invest capital in the business, plaintiff terminated the arrangement and refused defendant further access to the premises.

On December 18, 1961, defendant filed an action against plaintiff for an accounting of the earnings received during the joint arrangement period. Following this, on February 12, 1962, the parties met with their respective attorneys and a settlement agreement was worked out, reduced to writing and executed by the parties and their attorneys.

The agreement (introduced at the trial as defendant's Exhibit A) provides:

"THIS AGREEMENT made and entered into this 12th day of February, 1962, by and between HARRY GEE & ASSOCIATES, INC., and HARRY GEE, Individually (GEE) and ANTHONY A. TIMINERI, (TIMINERI) and is intended to be a full and final settlement of a dispute between the said parties and the lawsuit that is presently pending in the Superior Court of the State of California, in and for the County of Los Angeles—identified by Number 785,949.

1. TIMINERI waives any and all claims to commissions earned from GEE's principals for the period in question, namely March 6, 1961 to November 9, 1961.

2. GEE assigns to TIMINERI all accounts receivable of the following named principals that were earned during the period from March 6, 1961 to and including November 9, 1961.

ANALOGUE CONTROLS

GENERAL APPLIED SCIENCE LABORATORIES

STERLING TRANSFORMERS

WAAC LINE, INC.

ELECTRONIC TRANSISTORS CORP.

NATIONAL RESISTANCE

SAMUEL SILK SCREEN

3. TIMINERI and GEE agree to execute and write any and all necessary documents and letters to the aforementioned principals authorizing and directing the same to pay said accounts receivable directly to TIMINERI at 6845 Louise Ave., Van Nuys, California.

4. GEE represents that said accounts receivable as of November 8, 1961 are not definitely known, but are either $11,000.00 or in excess thereof.

5. That the parties agree to divide said accounts receivable as paid in the following ratio:

(A) 65% to TIMINERI

(B) 35% to GEE

6. Notwithstanding the foregoing, the first $144.94 payable to GEE by virtue of the payment of the aforedescribed ratio shall be paid directly to TIMINERI as reimbursement for the repair of an automobile that was paid for by TIMINERI prior to termination of the parties agreement.

7. It is understood and agreed that if any of the said accounts receivable are not paid, that the parties shall both suffer in conformance with the ratio as described above.

8. It is understood and agreed that TIMINERI shall pay GEE, Gee's proportion of said accounts receivable as received and forthwith.

9. If through inadvertence or any other cause any of the accounts receivable are paid directly to GEE by said principals, GEE shall pay TIMINERI, Timineri's proportion of said accounts receivable as received and forthwith.

10. The parties hereto agree that the said pending action before the Superior Court of the State of California, in and for the County of Los Angeles shall be dismissed with preju-

dice immediately, each party bearing his own costs and attorneys fees relating thereto.

In WITNESS WHEREOF the parties hereto agree to the foregoing terms and conditions."

On the date the agreement was signed Gee turned over to Timineri certain records and ledgers covering the activities of the parties during the period from March 6, through November 8, 1961. These records had been in plaintiff's possession since the joint arrangement began on March 6. The records were necessary in order for defendant to collect the commissions (referred to in the contract as accounts receivable). Defendant's former principals had been notified, shortly after the relationship between the parties was terminated on November 8, that they should hold up payments of the commissions until the dispute between the parties was settled. They complied with this request and no payments (of consequence) were received by either party prior to the date of the February 12, 1962, agreement.

In accordance with the terms of the agreement, on February 21, 1962, defendant secured the dismissal of the action seeking an accounting filed by him on December 18, 1961. Defendant then sought to collect, under the agreement, the commissions due from his former principals. He collected a total of $7,260.37 from these principals but refused to pay to plaintiff any of this amount, contending that he was not bound to do so since plaintiff had represented in the agreement (paragraph 4) that the accounts receivable totaled at least $11,000. He argued that he was entitled to not less than 65 percent of $11,000 (plus the reimbursement of $144.94 described in paragraph 6 of the agreement) or a total of $7,294.94. The present suit followed.

In concluding that plaintiff was entitled to a judgment in the amount of $2,115.48, the trial court found that under the contract (paragraph 5) plaintiff was entitled to 35 percent of the amount collected by defendant less the $144.94 reimbursement provided for therein.

The court further found that, on the date of the agreement (February 12, 1962), there was approximately $11,000 in commissions (accounts receivable) due and owing to the parties from defendant's former principals. In so finding the trial court impliedly found to be true plaintiff's representation in the agreement (paragraph 4), that as of November 8, 1961, there was not less than $11,000 in payments due.

The main issue presented both at the trial and in this appeal is whether there was sufficient admissible evidence to support the finding that $11,000 was due as plaintiff had represented. For reasons hereafter discussed, we have concluded that evidence relating to this finding was improperly admitted; that without this evidence insufficient evidence was introduced to support the disputed finding; and that, as a consequence, the judgment must be reversed.

At the outset of the trial it was stipulated that one of defendant's attorneys had examined all of the records and ledgers prepared during the business association of the parties (to wit, from March 6 to November 8, 1961), and that if called, he would testify that the records established that while a total of $12,687 was earned in commissions from the companies described as "defendant's companies," that $5,393.71 of this amount was paid to plaintiff (all but $431.80 being received prior to November 8, 1961); of the difference, defendant collected $7,260.36 and all but $24.52 of this amount after the February 12, 1962 agreement was executed. Only a total of $33.17 remained unpaid or uncollectible.

Plaintiff testified, on direct examination, that to the best of his knowledge, approximately $11,000 was due from defendant's former principals as of the end of 1961. On cross-examination, however, plaintiff indicated that this estimate was not based on his own knowledge, but was completely based on a "financial statement" issued by his "bookkeeper and accountant" Lou Carr; the statement was prepared by Carr using, as the only source of information, the records kept in plaintiff's office and the same records turned over to defendant when the settlement agreement of February 12, 1962 was executed; the statement in question was titled "Harry Gee Associates Commissions Receivable, January 15, 1962;" he did not know when the document was drawn up and did not supervise its execution; he had no idea of the nature of Carr's professional or educational qualifications but did not believe he was a C.P.A.; it was "entirely possible or maybe even probable" that the statement was prepared by one of the girls working in his office rather than Mr. Carr; there was no certification on the statement establishing that it was the product of an audit procedure or that it was an accurate summary of the pertinent records.

Plaintiff further testified that the statement was not related to the preparation of the regular financial statement. He had specifically instructed Mr. Carr to prepare the statement. He

testified, ''I instructed him to give me a statement as to what the commissions backlog was and break it down into the various principals based on the ones Timineri (defendant) brought in the organization and the ones that I had.'' The statement was prepared so that when he went to see defendant and his attorney concerning the settlement ''he would have something to discuss.'' The breakdown into amounts owing from the respective principals of each party was accomplished ''to make it clear when we were at the hearing as to what the activities of the business were in case this matter came up.'' The statement, he testified, was not prepared in the ''normal course'' of the general operation of his business but ''was made in preparation for a settlement discussion'' with defendant.

Defendant's objection to and motion to strike plaintiff's testimony concerning his $11,000 estimate of the amount of accounts receivable was overruled by the trial court. The objection and motion to strike were made on the ground that the testimony was based on hearsay and was introduced without proper foundation.

On redirect examination, plaintiff again repeated his approximation of the receivables due and defendant renewed his motion to strike. Counsel for defendant stated at the time: ''I would like to renew my motion to strike this witness's testimony with regard to this particular so-called commission backlog figures. It appears here they were not made in the normal course of the operation of his business, that there is no showing of the expertise of Mr. Carr, whether he is even an accountant or has any formal education in the area. I am not permitted to cross-examine him as to how he examined them, the figures.'' Counsel for defendant further argued, ''I was also basing the objection on the failure to show that they come within the business records exception to the hearsay rules since they were not prepared in the normal course of the business of this man, but were prepared for purposes of a lawsuit.'' In denying the motion to strike the court indicated that defendant could have called Mr. Carr if he had wanted his testimony. Thereafter, the statement in question was offered and received in evidence, again over defendant's objection that it was hearsay and that no foundation had been laid showing how it was prepared or by whom.

Following plaintiff's testimony, defendant testified as follows: He did not go over the business records prior to the settlement date (February 12, 1962), but relied on plaintiff's

representation that there would be $11,000 or in excess of that amount for him to collect; he would not have entered into the settlement agreement were it not for this representation; when, after receiving the books and records from plaintiff on February 12, 1962, he had had an opportunity to examine them, he discovered that only a little more than $7,000 was actually due.

It is clear that the evidence presented concerning the amount of accounts receivable due from defendant's former principals was hearsay. The question is whether it was shown to be admissible under any of the exceptions to the rule. The exception relied upon to support the introduction of the evidence was the business records exception as codified in section 1953f of the Code of Civil Procedure. No other theory was advanced and we know of no other basis upon which it could be ruled admissible.

Code of Civil Procedure section 1953f (now covered in Evidence Code, § 1271), provides: "A record of an act, condition or event, shall, in so far as relevant, be competent evidence if the custodian or other qualified witness testifies to its identity and the mode of its preparation, and if it was made in the regular course of business, at or near the time of the act, condition or event, and if, in the opinion of the court, the sources of information, method and time of preparation were such as to justify its admission."

Undeniably, section 1953f (which was enacted in 1941) established a policy of great liberality regarding the foundational requirements for use of evidence pertaining to business records, the section substantially enlarging the operation of the common law business records exception. (18 Cal. Jur.2d, Evidence, § 237, pp. 715-717; *Reisman* v. *Los Angeles City School Dist.*, 123 Cal.App.2d 493, 503-504 [267 P.2d 36].) Still, section 1953f expressly provides a number of foundational prerequisites for the use of such evidence, namely, ". . . if the custodian or other qualified witness testifies to its identity and the mode of its preparation, and if it was made in the regular course of business, at or near the time of the act, condition or event. . . ."

"The foundation for the admission of business records must include evidence as to the mode of preparation, and identification of the records as made in the regular course of business." (18 Cal.Jur.2d, Evidence, § 237, at p. 717; and see *Eye* v. *Kafer, Inc.*, 202 Cal.App.2d 449, 458 [20 Cal.Rptr. 841].)

In *Pruett* v. *Burr*, 118 Cal.App.2d 188 [257 P.2d 690], the court held that it was error to permit the introduction in evidence of certain letters regarding a chemical analysis written by officials of the Department of Agriculture to third persons where, among other things, there was no testimony showing the mode or time of preparation of the writings or that they were made in the regular course of business.

In *Reisman* v. *Los Angeles City School Dist., supra*, 123 Cal.App.2d 493, the trial court admitted in evidence, under section 1953f, a certain report concerning blacktop surfacing of city school playgrounds on which plaintiff's minor child had been fatally injured. The report itself indicated that one of the reasons for its preparation was the lawsuit in which it was introduced. On appeal, the introduction of the report was held to be error, the appellate court concluding, that it was not shown to have been made in the "regular course of business." The court relied on the case of *Palmer* v. *Hoffman*, 318 U.S. 109 [87 L.Ed. 645, 63 S.Ct. 477, 144 A.L.R. 719]. In *Palmer*, an action for damages arising from a collision of an automobile with a train, the written statement of a railroad engineer who had passed away before the trial was offered by the defendant railroad. The statement was introduced under an Act of Congress which in substance contained the same provisions as section 1953f. The statement was ruled by the Supreme Court to be inadmissible hearsay which did not qualify as a business record. The court stated at p. 114: "If the Act is to be extended to apply not only to a 'regular course' of a business but also to any 'regular course' of conduct which may have some relationship to business, Congress not this court must extend it. Such a major change which opens wide the door to avoidance of cross-examination should not be left to implication. Nor is it any answer to say that Congress has provided in the Act that the various circumstances of the making of the record should affect its weight, not its admissibility. That provision comes into play only in case the other requirements of the Act are met."

While it is true that the trial court has broad discretion in admitting business records under section 1953f (*Western Specialty Co.* v. *Clairemont Constr. Co.*, 204 Cal.App.2d 532, 535 [22 Cal.Rptr. 536]), the authorities above cited and the express language of the statute, make it clear that there must be some evidence showing that the basic minimal requirements —identifying the records, the mode of their preparation and

148

showing that they were prepared in the regular course of business—have been met.

■ Here, the foundational testimony was totally inadequate. As the court said in *Pruett* v. *Burr, supra,* 118 Cal. App.2d 188, 203: "It does not appear to us under the evidence here produced, that the question as to whether or not the proper foundation had been laid was debatable." Plaintiff's testimony in the instant case in fact affirmatively demonstrated the inapplicability of section 1953f, for he testified that the record was not prepared in the "normal course" of his business but in anticipation of the lawsuit with defendant. The statement introduced and plaintiff's testimony based on it, were, therefore, inadmissible hearsay.

■ The error in allowing this evidence in, over defendant's objections, was clearly prejudicial to defendant, since, without it, there was no evidence to support the trial court's finding that there was at least $11,000 in accounts receivable as plaintiff had represented. The only other evidence on the issue was that presented by defendant (in the form of the stipulated testimony of defendant's attorney), which clearly tended to show that plaintiff's representation in paragraph 4 of the contract, was untrue, and on which representation defendant testified he relied in entering into the contract.

■ The trial court also made a finding that ". . . on the Twelfth day of February 1962, Defendant Anthony A. Timineri knew or should have known the amount due and owing Harry Gee Associates, Inc. from principals belonging to him before the merger." This finding is equally without support. Defendant testified he did not know the amount due. It is undisputed that, prior to the date of the agreement of February 12, the records from which the amount due could be computed were in the control of plaintiff, and that neither plaintiff nor defendant had up to that time examined those records.

■ The contract sued on was, it appears, either entered into as the result of a mutual mistake of fact or as the result of a fraudulent representation. Upon the showing made, defendant was entitled to ask that the contract be rescinded and the status quo restored, or alternatively, he could have sued for damages for fraud. Those damages would not be the difference between what he received and what plaintiff promised him, but the difference between what he has received and what he gave up. (Civ. Code, § 3343.) What defendant gave up was what he could have collected under the original joint

venture agreement which might have been more or less than the $7,260 he has collected. If the trial court found fraud, and if defendant gave up more than he has collected, plaintiff would be entitled to nothing and defendant would be entitled to recover on his cross-complaint; but, if defendant gave up less than he has collected, plaintiff would be entitled to recover the excess collection, and that excess is not necessarily 35 percent of the collected sums.

The case was not tried on this theory; but on a retrial, these issues may be considered.

The judgment is reversed.

Files, P. J., and Kingsley, J., concurred.