Filed 10/14/15  Desai v. Choudhury CA2/2

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| AMIR DESAI,<br><br>    Cross-complainant and Appellant,<br><br>v.<br><br>PARTHA CHOUDHURY et al.,<br><br>    Cross-defendants and Appellants.<br><br>———————————<br><br>AMIR DESAI,<br><br>    Cross-complainant and Appellant,<br><br>v.<br><br>JONATHAN BEASLEY et al.,<br><br>    Cross-defendants and Respondents. | B252306<br><br>(Los Angeles County<br>Super. Ct. No. NC055957) |

//

//

//

//

//

APPEALS from orders of the Superior Court of Los Angeles County. Ross M. Klein, Judge. Affirmed.

Kasdsinove & Raskin, Edward B. Raskin, Serafina Raskin, Joshua M. Caplan for Cross-complainant and Appellant Amir M. Desai.

Law Office of James A. Otto, James A. Otto; Regina Ashkinadze for Cross-defendants and Appellants Partha Choudhury et al. and Cross-defendants and Respondents Jonathan Beasley et al.

_____

The trial court denied, as to one set of plaintiffs/cross-defendants, a special motion to strike a cross-complaint as a Strategic Lawsuit Against Public Participation (SLAPP). (Code Civ. Proc., § 425.16.).[1] The trial court granted a second anti-SLAPP motion, brought by a different set of plaintiffs/cross-defendants.

The appealing plaintiffs/cross-defendants contend, among other things, that the trial court erred in denying their anti-SLAPP motion because the court improperly considered release agreements that were the subject of the cross-complaint. The cross-complainant separately appeals the trial court's order granting the second anti-SLAPP motion, arguing that he established a reasonable probability of prevailing.

We affirm the order denying the first anti-SLAPP motion and the order granting the second.

## BACKGROUND

In April 2011, 18 former employees of Molina Healthcare, Inc. (Molina) sued Molina and its former chief information officer, appellant and respondent Amir Desai, among others.[2] The plaintiffs had previously worked as security analysts and computer programmers in Molina's information technology department. All were American citizens or green card holders. In their complaint, the plaintiffs alleged that Molina and

---

[1] Unless otherwise noted, all further statutory references are to the Code of Civil Procedure.

[2] This is the third appeal in this case. In the first appeal (B237174), decided in January 2013, we found that the trial court improperly denied a special motion to strike filed by certain plaintiffs (and cross-defendants) against Molina, because Molina failed to submit evidence showing that it had a reasonable probability of prevailing on a cross-complaint it filed. We dismissed the first appeal with respect to Desai because the special motion to strike targeted a nonoperative cross-complaint filed by Desai. In the second appeal (B239941), decided in May 2013, we found that a demurrer was properly sustained in favor of Desai, primarily because plaintiffs' causes of action against Desai for employment-based discrimination improperly sought to impose individual liability.

Desai engaged in improper discrimination and violated various laws by firing the plaintiffs and replacing them entirely with Indian nationals holding "H-1B visas."[3]

In August 2011, Desai filed a cross-complaint against plaintiffs and appellants Partha Choudhury, Tim Nguyen, James Nguyen, Edward Duong, Ismail Guzey, Chongwei "Steve" Mo, and Karen Ku (the Group 1 plaintiffs). Desai's cross-complaint alleged that in January and February of 2010, each of the Group 1 plaintiffs entered into severance agreements and written general releases (the Group 1 releases) with Molina, whereby the Group 1 plaintiffs agreed to "compromise, fully settle and fully release all claims which [the Group 1 plaintiffs] may have or claim to have against Company arising out of or in any way relating to . . . employment with and separation of employment from Company." "Company" was defined to include Molina, as well as its "agents, officers, directors, employees, and owners." At the time the Group 1 releases were executed, Desai was an employee and officer of Molina. The Group 1 plaintiffs received lump-sum severance payments for agreeing to the releases. The cross-complaint alleged that, by filing the initial complaint, the Group 1 plaintiffs breached the terms of the releases, and that Desai was entitled to an award of attorney fees in connection with this breach.

Soon after the filing of Desai's original cross-complaint, Desai filed the operative first amended cross-complaint (FACC). The FACC made largely the same allegations with respect to the Group 1 plaintiffs. It also added new cross-defendants: plaintiffs and respondents Tsung-Hsien "Joey" Shen, Jonathan Beasley, Irina Masharova, Anna Rshtouni, Marcelo Pineda, Charles Price, David De Hilster, Yuri Grishko, Tim Luk, and Lily Bumatay (the Group 2 plaintiffs). The FACC alleged that Molina participated in mediation with the Group 2 plaintiffs and thereafter entered into written release agreements (the Group 2 releases) with them. The Group 2 releases covered Molina, as well as its "directors, officers, . . . employees and agents." The Group 2 releases stated, in part: "In exchange for . . . payment and benefits . . . you are waiving and releasing all

---

[3] Under certain conditions, the United States may grant a work visa to an alien "who is coming temporarily to the United States to perform services in . . . a specialty occupation." (8 U.S.C. § 1101(a)(15)(H)(i)(b).)

known or unknown claims and causes of action you have or may have, as of the day you sign this Agreement, against Molina arising out of your employment with Molina, including your separation from employment." According to the FACC, at the time the Group 2 releases were executed, Desai was an officer and employee of Molina. The FACC alleged that the Group 2 plaintiffs breached the terms of the Group 2 releases by filing the initial complaint, and that Desai was entitled to an award of attorney fees.

The Group 1 and Group 2 plaintiffs filed separate anti-SLAPP motions. The Group 1 plaintiffs' motion argued, among other things, that the Group 1 releases were unenforceable. The Group 2 plaintiffs contended that Desai had no standing to enforce the Group 2 releases because he was not an employee of Molina at the time of their execution. Desai opposed the motions, initially without submitting proof of the release agreements. Afterward, Desai was granted leave to submit the declaration of Amy Dobberteen, former assistant general counsel for Molina, attaching copies of the Group 1 and 2 releases.

The trial court denied the Group 1 plaintiffs' motion, finding that Desai made a prima facie showing of breach of contract. The court granted the Group 2 plaintiffs' motions, concluding that Desai was no longer employed by Molina when the Group 2 releases were executed, and that Desai failed to show he was an intended third party beneficiary of the releases.

The Group 1 plaintiffs timely appealed the order denying their anti-SLAPP motion, while Desai timely appealed the order granting the Group 2 plaintiffs' anti-SLAPP motion.

## DISCUSSION

Appeal lies from an order granting or denying a motion to strike under the anti-SLAPP statute. (§ 425.16, subd. (i).) The anti-SLAPP statute applies to cross-complaints, as well as to complaints. (§ 425.16, subd. (h); *Jarrow Formulas, Inc. v. LaMarche* (2003) 31 Cal.4th 728, 735, fn. 2.) The trial court's rulings granting and denying the anti-SLAPP motions are subject to de novo review. (*Oasis West Realty, LLC*

*v. Goldman* (2011) 51 Cal.4th 811, 820; *Soukup v. Law Offices of Herbert Hafif* (2006) 39 Cal.4th 260, 269, fn. 3.)

The anti-SLAPP statute allows courts to expeditiously dismiss "'a meritless suit filed primarily to chill the defendant's exercise of First Amendment rights.'" (*Paulus v. Bob Lynch Ford, Inc.* (2006) 139 Cal.App.4th 659, 670; § 425.16, subd. (a); *Simpson Strong-Tie Co., Inc. v. Gore* (2010) 49 Cal.4th 12, 21.) There are two components to a motion to strike brought under section 425.16. First, the defendant (or, in this case, cross-defendants) must show that the challenged cause of action is one arising from protected activity.[4] (*Equilon Enterprises v. Consumer Cause, Inc.* (2002) 29 Cal.4th 53, 67.) Second, if the lawsuit affects constitutional rights, the plaintiff (or cross-complainant) must establish a reasonable probability that he or she will prevail on the merits of the claims. (§ 425.16, subd. (b)(1); *City of Cotati v. Cashman* (2002) 29 Cal.4th 69, 76; *Zamos v. Stroud* (2004) 32 Cal.4th 958, 965.)

## I. **Prong one**

Desai concedes that the Group 1 and 2 plaintiffs met their burden on the first prong of the anti-SLAPP analysis. The filing of a complaint is an act undertaken in furtherance of the constitutional right of petition. (*Navellier v. Sletten* (2002) 29 Cal.4th 82, 90 (*Navellier I*).) It is a "writing made before a . . . judicial proceeding." (§ 425.16, subd. (e)(1).) The FACC alleges that plaintiffs' "filing and prosecution of the Complaint . . . constitutes a violation of the . . . Releases." The claim, therefore, clearly arises from

---

[4]     Under the statute, an act in furtherance of the right of petition or free speech includes: "(1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law, (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law, (3) any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest, or (4) any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest." (§ 425.16, subd. (e).)

activity protected by section 425.16. (*Navellier I*, *supra*, 29 Cal.4th at p. 90; *Mundy v. Lenc* (2012) 203 Cal.App.4th 1401, 1408-1409.)

## II. **Prong two—Group 1 plaintiffs**

When the first prong on an anti-SLAPP motion is satisfied, the burden shifts to the complaining party to establish a probability of prevailing. (*HMS Capital, Inc. v. Lawyers Title Co.* (2004) 118 Cal.App.4th 204, 213.) The party must show that the complaint is legally sufficient and is supported by prima facie evidence that, if credited, would be sufficient to sustain a favorable judgment. (*Navellier I, supra,* 29 Cal.4th 82, 93; *Jarrow Formulas, Inc. v. LaMarche*, *supra*, 31 Cal.4th at p. 738; *Major v. Silna* (2005) 134 Cal.App.4th 1485, 1498.) The burden under the second prong is similar to that of a party opposing a motion for summary judgment. (*Navellier v. Sletten* (2003) 106 Cal.App.4th 763, 768 (*Navellier II*); *Delois v. Barrett Block Partners* (2009) 177 Cal.App.4th 940, 947.)

The party opposing an anti-SLAPP motion cannot simply rely on the allegations of the complaint; rather, the opposition must be based on evidence that would be admissible at trial. (*Integrated Healthcare Holdings, Inc. v. Fitzgibbons* (2006) 140 Cal.App.4th 515, 527.) "In reviewing the plaintiff's evidence, the court does not weigh it; rather, it simply determines whether the plaintiff has made a prima facie showing of facts necessary to establish its claim at trial." (*Paulus v. Bob Lynch Ford, Inc.*, *supra*,139 Cal.App.4th 659, 673.) To avoid being stricken as a SLAPP, the party opposing an anti-SLAPP motion must establish that his or her claim has at least "minimal merit." (*Navellier I, supra,* 29 Cal.4th 82, 88-89.)

The gravamen of the FACC is a cause of action for breach of contract. The elements of a cause of action for breach of contract are: (1) the existence of a contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) resulting damages to plaintiff. (*Oasis West Realty, LLC v. Goldman*, *supra*, 51 Cal. 4th 811, 821.) In opposing the Group 1 plaintiffs' anti-SLAPP motion, Desai established that the FACC had at least minimal merit. Desai showed that he was an officer and employee of Molina at the time of execution of the Group 1 releases, and that the releases expressly

7

applied to Molina as well as its officers and employees. He therefore made a sufficient showing, under the relevant standard of analysis, that he was entitled to enforce the Group 1 releases. Desai also adequately established that the terms of the Group 1 releases were performed, that the Group 1 plaintiffs breached the releases by bringing suit, and that he suffered damages by incurring attorney fees.

On appeal, the Group 1 plaintiffs primarily contend that the trial court erred by considering the Group 1 releases over plaintiffs' objections. We review the trial court's evidentiary rulings for an abuse of discretion. (*Public Employees' Retirement System v. Moody's Investors Service, Inc.* (2014) 226 Cal.App.4th 643, 683.) We do not overturn an evidentiary ruling unless "'the trial court exceeded the bounds of reason, all of the circumstances before it being considered.'" (*Ibid.*)

The Group 1 plaintiffs argue that the Group 1 releases were hearsay. The trial court found that the releases were admissible under Evidence Code section 1271, the business records exception to the hearsay rule. Evidence Code section 1271 states: "Evidence of a writing made as a record of an act, condition, or event is not made inadmissible by the hearsay rule when offered to prove the act, condition, or event if: [¶] (a) The writing was made in the regular course of a business; [¶] (b) The writing was made at or near the time of the act, condition, or event; [¶] (c) The custodian or other qualified witness testifies to its identity and the mode of its preparation; and [¶] (d) The sources of information and method and time of preparation were such as to indicate its trustworthiness."

We find that the trial court did not abuse its discretion by finding the Group 1 releases admissible. In her declaration, Dobberteen, assistant general counsel for Molina, stated that the releases were prepared and maintained by Molina in its regular course of business, were kept in Molina's files after they were executed, and were subsequently accessed by her. Dobberteen's declaration was sufficient to render the releases admissible. Although Molina is a healthcare company, Dobberteen's statement that the releases were business documents was credible. Businesses often enter into agreements with employees during the regular course of business, and Dobberteen, who worked on

8

legal matters at Molina, was qualified to speak regarding the releases. Further, the releases were obviously made at or near the time of the event—they became effective upon execution. Dobberteen also sufficiently identified the releases and stated that they were prepared by Molina in connection with the Group 1 plaintiffs' termination. The Group 1 plaintiffs' assertion that the releases were not admissible because they were prepared "in anticipation of the lawsuit" (*Gee v. Timineri* (1967) 248 Cal.App.2d 139, 148) is incorrect. The releases appear to have been prepared with the intention of *avoiding* litigation. They do not bear the indications of untrustworthiness often associated with records prepared in anticipation of litigation, like documents concocted to gain an unfair advantage in litigation. (See *id.* at p. 144 [disputed financial statement was admittedly made in preparation for settlement discussion].) As the subject of this litigation, the Group 1 releases were properly considered.

The Group 1 plaintiffs also contend that their signatures on the releases were never authenticated. The validity of the signatures was never contested, however. Nor was the fact that the Group 1 plaintiffs signed the releases. Therefore, Dobberteen's declaration, including her uncontested statement that the Group 1 plaintiffs entered into the releases, was adequate authentication. (See Evid. Code, § 1410; *People v. Gibson* (2001) 90 Cal.App.4th 371, 383 ["Circumstantial evidence, content and location are all valid means of authentication"].)

The Group 1 plaintiffs further argue that the releases are unenforceable because, pursuant to the releases, the Group 1 plaintiffs waived and released all past or present claims, including claims for intentional torts, such as fraud. They contend that these releases violate Civil Code section 1668, which states: "All contracts which have for their object, directly or indirectly, to exempt anyone from responsibility for his own fraud, . . . or violation of law, whether willful or negligent, are against the policy of the law." Civil Code section 1668, however, "is meant to prohibit contracts releasing liability for *future* torts [citation], not to prohibit settlements of disputes relating to past conduct." (*Watkins v. Wachovia Corp.* (2009) 172 Cal.App.4th 1576, 1587-1588, fn. 12; see also *City of Santa Barbara v. Superior Court* (2007) 41 Cal.4th 747, 754-755.) The

9

Group 1 releases did not purport to release any claims for future torts. Furthermore, to the extent that the Group 1 plaintiffs contend that they were fraudulently induced to enter into the releases, such a claim would require resolution of disputed issues of fact, and could not properly be resolved on the anti-SLAPP motion.

Accordingly, we find that the trial court properly denied the Group 1 plaintiffs' anti-SLAPP motion.[5]

## III. **Prong two—Group 2 plaintiffs**

Desai was no longer employed by Molina at the time the Group 2 releases were executed. The parties to the Group 2 releases were the individual Group 2 plaintiffs, on one side, and Molina, on the other. Molina was defined to include, "its subsidiaries, predecessors, successors, affiliates, directors, officers, fiduciaries, insurers, attorneys, employees and agents." The Group 2 plaintiffs "waiv[ed] and releas[ed] all known or unknown claims and causes of action . . . against Molina arising out of . . . employment with Molina." They also agreed "never to sue" Molina for any reason covered by the general releases in the agreement.

When a settlement agreement is clear and explicit, we determine the parties' intent by reference to the language of the agreement. (*Chisom v. Board of Retirement of Fresno County Employees' Retirement Assn.* (2013) 218 Cal.App.4th 400, 414; Civ. Code, §§ 1638, 1639.) Here, the Group 2 releases unambiguously apply to Molina "employees." The release language does not cover "former employees." We find that the releases are clear and explicit, and they do not provide for a release of claims against former employees, such as Desai.

---

[5] On appeal, the Group 1 plaintiffs argue that the trial court's order must be reversed as to plaintiff Karen Ku because Dobberteen's declaration did not attach a copy of the release signed by her. Because this issue was never raised in the trial court, we consider it forfeited. In any event, Dobberteen declared that Ku signed the same release as the other Group 1 plaintiffs. Ku did not dispute that she executed the release. Desai, therefore, made a prima facie showing that Ku entered into the release.

Desai contends for the first time on appeal that he was made a third party beneficiary to the Group 2 releases by a "non-disparagement" clause in paragraph 10 of the Group 2 releases. Under this clause, the Group 2 plaintiffs agreed to "not directly or indirectly say or do anything which would disparage, reflect negatively on, or call into question Molina's business operations, products, reputation . . . or the reputation of any past or present directors, executives, officers, employees, [or] agents . . . of Molina."

In order for a third party to qualify as a contract beneficiary, the intent to confer this status must appear in the terms of the agreement. (*Brinton v. Bankers Pension Services, Inc.* (1999) 76 Cal.App.4th 550, 558.) "'It is sufficient if the claimant belongs to a class of persons for whose benefit it was made.'" (*Ibid.*) While the non-disparagement clause covers Desai as a past officer and employee of Molina, we find nothing in the clause that transforms the general release of Molina and its employees into a release covering past employees.

"'As is true with summary judgment motions, the issues in an anti-SLAPP motion are framed by the pleadings.'" (*Paiva v. Nichols* (2008) 168 Cal App.4th 1007, 1017; *Oviedo v. Windsor Twelve Properties, LLC* (2012) 212 Cal.App.4th 97, 109.) In the FACC, Desai sued the Group 2 plaintiffs for breaching the Group 2 releases by "filing and prosecuting" the initial complaint. Desai did not sue for disparagement. The FACC does not mention disparagement or the non-disparagement clause. Nor does the FACC seek to recover damages for disparagement. And the non-disparagement clause does not purport to release or waive any claims against former Molina employees.

If anything, the language used in the non-disparagement clause supports the conclusion that the Group 2 plaintiffs' agreement to waive and release all claims against Molina did not apply to former employees. Each clause in a contract helps to interpret another. (Civ. Code, § 1641.) The parties certainly knew how to cover former employees—they expressly referenced "past" employees in the non-disparagement clause. The parties, however, chose not to include past employees within "Molina," the beneficiary of the releases. The Group 2 releases, therefore, were clear in that they did not prohibit the Group 2 plaintiffs from bringing an action against Desai.

11

Thus, the trial court correctly found that Desai did not meet his burden of establishing a probability of prevailing against the Group 2 plaintiffs, and the order granting the Group 2 plaintiffs' anti-SLAPP motion was proper.

## **DISPOSITION**

The order denying the Group 1 plaintiffs' anti-SLAPP motion is affirmed. Desai shall recover his costs associated with responding to the Group 1 plaintiffs' appeal. The order granting the Group 2 plaintiffs' anti-SLAPP motion is affirmed. The Group 2 plaintiffs shall recover their costs on appeal from Desai.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.


                                        BOREN, P.J.

We concur:


        ASHMANN-GERST, J.


        CHAVEZ, J.